*In re* INTEREST OF JUAN ANTONIO PEREZ, a Minor—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* DOROTHY PEREZ, Respondent-Appellant.)

(No. 58334; )

First District (4th Division)—October 10, 1973.

Paul Bradley, Deputy Defender, of Chicago, (Martin Carlson, Assistant Appellate Defender, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (Kenneth L. Gillis and John M. Cutrone, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

The respondent, Dorothy Perez, appeals from a judgment of the Circuit Court of Cook County which found she was an unfit parent and ordered the appointment of a guardian with authority to consent to the legal adoption of her son, Juan Antonio Perez.

The issue on appeal is whether the evidence is sufficient to support the trial court's finding of unfitness.

Juan Antonio Perez was born on June 12, 1967, and on June 21, 1967, a petition was filed in the Juvenile Court of Cook County alleging that he was a neglected minor. On June 26, 1967, a default order was entered adjudging him a ward of the court.

On May 10, 1971, a supplemental petition was filed which alleged that the parents of Juan Antonio Perez were unfit because they had not shown a reasonable amount of interest, concern or responsibility as to his welfare, and also stated the foster parents wanted to adopt the child. On August 13, 1971, a default order was entered in which Richard S. Laymon was appointed as legal guardian with authority to consent to his legal adoption.

The default order of August 13, 1971, was subsequently vacated with respect to Mrs. Perez, and on October 26, 1972, a hearing was held on the allegations contained in the supplemental petition.

At the hearing, Mrs. Perez testified she had left her baby at the hospital after giving birth because she was afraid to bring him home. Her husband, from whom she had gotten a divorce, had threatend to harm him, and she did not think she was physically capable of taking care of her children. Mrs. Perez stated she had three other children, one of whom was living with her, one was married, and one lived with her mother. She testified she was presently able to look after Juan and had been trying to make contact with him since January of 1972, when she came to believe her ex-husband would not harm Juan. She had not seen her husband in four years, and he had sworn to other members of the family he would not harm the child or make any trouble.

Mrs. Joyce Terrance, the foster mother, testified Juan had been living with her family since June of 1967. She stated Mrs. Perez called her several times during the first month after she had obtained custody of Juan, but did not inquire about, send a gift or letter, or visit Juan until July of 1972. At the time of the hearing Mrs. Perez had seen Juan a total of four times since 1967: once each in July, August, September and October of 1972.

■■ In order for the court to empower a guardian to consent to adoption without the consent of the natural parent, the natural parent must be found to be unfit (Ill. Rev. Stat. 1971, ch. 4, par. 9.1—8), and such unfitness must be proven by clear and convincing evidence. *In re Deerwester* (1971), 131 Ill.App.2d 952; *Carlson v. Oberling* (1966), 73 Ill. App.2d 412.

Mrs. Perez argues she was not found to be unfit by clear and convincing evidence because what she did was in the best interests of the

child. She failed to keep up a relationship with her child, not out of neglect, but rather because she feared for his safety. She suggests the case of *In re Deerwester* (1971), 131 Ill.App.2d 952, is similar to the case at bar and should be controlling. In that case the child was mentally handicapped, had a speech problem and poor eyesight. The child was placed in The Baby Fold in 1965, where arrangements for medical treatment were made, and in 1967 he was placed in a foster home eighty miles from his natural mother. Although the mother, who was divorced, was able to visit him only once because of her work schedule and problems of transportation, other visits were discussed with caseworkers, and it was established that during the previous year the mother had sent birthday, Valentine and Christmas cards as well as a letter.

This is a different situation than the one before us, where the mother did nothing for five years. Surely the fear of her ex-husband, whom she had not seen in four years, would not have prevented her from keeping informed about her son by telephoning, writing letters, or talking with caseworkers if she had an interest in his welfare.

■■ The fact that one of her other children did not live with her is also significant in that it relates to her ability to take care of Juan.

■■ We hold the failure of the mother to manifest any interest in her child for a period of five years, when taken into consideration with the other evidence, is sufficient to constitute unfitness as defined in the statute (Ill. Rev. Stat. 1971, ch. 4, par. 9.1—1(D)(b)) by clear and convincing evidence.

For these reasons the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

ADESKO and JOHNSON, JJ., concur.