*In re* TRACY GRANT *et al.,* Minors.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* JOHNNIE MAE GRANT, Respondent-Appellant.)

(No. 60534;

First District (1st Division)—June 2, 1975.

Paul Bradley and Eva Weisner, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Donald M. Devlin, and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

After a hearing, the juvenile division of the circuit court entered an order finding that Johnnie Mae Grant (respondent) was unfit to retain custody of her twin children. The court appointed a guardian of the person of these children with authority to consent to their legal adoption. Respondent appeals.

In this court, respondent raises one issue: the evidence adduced at the hearing does not support the finding that respondent is unfit to retain custody of the children. The People of the State of Illinois, petitioner herein, respond with the contention that respondent was an unfit parent, never had custody of her children and seldom visited them.

The children involved are Tracy Grant and Troy Grant, born May 31, 1967. The record contains no information regarding their father other than a showing that respondent attempted unsuccessfully to obtain some contribution from him toward support. Respondent has never had custody of the children. On June 26, 1967, before they were 1 month old, a petition was filed in the juvenile division charging respondent with neglect of the children. On August 4, 1967, the court found these babies to be neglected children and they were adjudged wards of the court. From that time on, the children lived in foster homes. In June of 1970, the children

were placed with Haddie Boone as their foster mother, and they have remained with her continuously to this date.

Testimony was given by two social workers, by the present foster mother and by respondent. Chris Benson, one of the social workers, was associated with the situation from November 1970 to February 1972. During this entire period of time, respondent did not visit the children although the witness "encouraged" her to do so. Linda Powell has been the social worker assigned to the case from December 1972 to the present time. She testified that the children had never lived with the respondent. To her knowledge, there had been no contact between the children and their natural father at any time. Respondent visited the children once in June of 1973 and once in January of 1974. The witness met with the respondent on March 30, 1973. Respondent told her then that she was not able to take custody of the children. The witness suggested that respondent visit with the children and told respondent that she could arrange a visit between respondent and the children at the office of the Department of Children and Family Services.

The foster mother, Haddie Boone, testified that she had no contact with respondent during 1970 after placement of the children and none during all of 1971. During that time, respondent did not telephone, sent no cards or letters and no gifts for the children. In 1972, respondent visited the children once in May and once in June. That year she sent the children no cards or letters. She did send them some gifts during May 1972, at the time of their birthday. In June 1973, respondent visited with the children at her own home. Mrs. Boone took them there for that purpose. During that year, respondent sent no cards or letters to the children. She did, however, give both of them gifts of clothes and bicycles. During 1973, respondent telephoned the children perhaps four or five times. During 1974, to the date of the hearing (February 14, 1974), respondent visited the children once at the home of the witness. The witness testified that she would be willing to adopt the twins if the court could terminate the rights of their natural parents.

According to the testimony of Mrs. Boone, the children, now approximately 8 years of age, spoke to their mother and she thought that the visits went "well." There have been some discussions between Mrs. Boone and the respondent during which the former offered to care for the children as a babysitter in the event that the court returned them to respondents' custody. In further discussions between them, respondent indicated that it would be necessary for her to have a larger apartment if she should be granted custody of the children. Mrs. Boone then told respondent that the children would start school in September. Mrs. Boone testified that the children address her as "Mamma." They refer to the respondent as

"Johnnie." However, the record shows that the children are aware of the fact that respondent is their mother.

Respondent testified that during 1973 she bought each of the children a bicycle which cost her some $85. In addition, she bought them some clothes for about $30 because they were going away on a 2-week vacation with Mrs. Boone. She also detailed various toys that she had purchased for the children, between the fall of 1973 and the date of trial, at a cost of approximately $100. She testified that her visits with the children at the home of Mrs. Boone went well and that the children gave her a Christmas gift of some handkerchiefs. All of them enjoyed the visits. She has never told the children directly that she might arrange for them to visit in her apartment. She knew from comments by the children that they were aware of the fact that she was their mother.

The respondent testified that her present income is about $175 a week which nets her $126. She has been working since May of 1973. Prior to that time she was on public aid from which she received $159 per month. Her apartment consists of a large living room, a kitchen and bedroom for which she pays rent of $110 per month. She stated that she was looking for a larger apartment, perhaps with two bedrooms; so far without result. She calculated that she could obtain larger quarters for $150. She was always under the impression, received from one of the social workers, that it would be necessary for her to be employed and to have a larger apartment if she wished to obtain custody of the children. At the time of trial she was 27 years old.

It should be noted that on cross-examination respondent testified that she would like to have the children stay with Mrs. Boone for 5 days each week so that she could have custody of them on the weekends. Mrs. Boone makes her home in Harvey, Illinois. In order for respondent to visit there, it would be necessary for her to take the Chicago elevated train and then to take another train to a station identified only as "151st." Apparently Mrs. Boone lives some distance from the station as respondent testified that it was necessary to take a taxicab from the station but that sometimes Mr. Boone would pick her up. At the time of her last visit, Mrs. Boone picked respondent up at the train station.

Analysis of the rights of these parties must necessarily commence with an examination of the Juvenile Court Act and the adoption act of 1959. The Juvenile Court Act states its purpose and policy as preservation and strengthening of the family ties of a minor whenever possible and "removing him from the custody of his parents only when his welfare or safety or the protection of the public cannot be adequately safeguarded without removal  *  *  *." In the same portion of the statute, the legislature provided that it "shall be administered in a spirit of humane concern

* * *." Furthermore, it provides that "[t]he parents' right to the custody of their child shall not prevail when the court determines that it is contrary to the best interests of the child." The statute provides that it shall be "liberally construed." Ill. Rev. Stat. 1973, ch. 37, par. 701—2.

The statute also sets out a procedure, such as involved in the case before us, whereby the court may appoint a guardian of the person authorized to consent to the adoption of the minor in accordance with the adoption act of 1959 which is specifically referred to in the Juvenile Court Act. In setting out this procedure, the statute also refers to the adoption act, stating, "A finding of the unfitness of a nonconsenting parent must be made in compliance with that Act." See Ill. Rev. Stat. 1973, ch. 37, par. 705—9.

Similarly the adoption act contains a number of provisions pertinent here. Relative to the term "unfit person", the statutory definition describes as grounds for unfitness (Ill. Rev. Stat. 1973, ch. 4, par. 9.1—1(D)(b)):

> "Failure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare."

The adoption act also has a provision that it shall be "liberally construed." Ill. Rev. Stat. 1973, ch. 4, par. 9.1—20.

■■ In these matters involving children, it is always necessary to retain in mind the distinction between two general types of proceedings. Some cases are concerned with the right of the parents to retain custody of their own children. Generally these situations may be temporary and subject to further adjustments by the court. On the other hand, in other cases, the court is dealing with adoption which severs permanently not only custodial rights but all rights and duties flowing from parenthood. In the latter type of situation, such as in the case before us, the legal steps taken have complete permanence and they must therefore be subject to the most careful scrutiny.

■■ In determining the rights of these parties, we must also take most careful note of various principles announced by the reviewing courts of Illinois in their application of these statutory enactments. This court must recognize the inherent right which all parents have to the society and custody of their own child. (See *In re Gonzales*, 25 Ill.App.3d 136, 143, 323 N.E.2d 42, and cases there cited.) This inherent right should not be abrogated without compelling reasons. The courts of Illinois have unanimously held that to justify termination of the rights of natural parents to the custody of their own children, their unfitness for the exercise of their parental rights must be established by clear and convincing evidence. The customary standard of proof by a preponderance of the evidence is not sufficient. "The rights of natural parents to their children cannot be severed unless a clear and convincing case is presented in strict

compliance with the Adoption Act." *In re Interest of Moriarity*, 14 Ill.App.3d 553, 556, 302 N.E.2d 491; *In re Interest of Perez*, 14 Ill.App.3d 1019, 1020, 304 N.E.2d 109.

■■ It need hardly be added that, in reaching a decision in the type of case before us, the trial court and reviewing courts must give prime consideration to the welfare and best interests of the child or children involved. It has been stated in an adoption proceeding that this does not mean that the sole issue before the court, as distinguished from questions of unfitness of the parents, is a determination of which of two adverse parties could best provide for the child. (See *In re Shuman*, 22 Ill.App.3d 151, 153, 319 N.E.2d 287.) In the type of situation before us, involving the issue of terminating the interests and rights of a natural parent so that the court may in the future proceed with examination of the merits of an adoption, we are required to consider the best interests of the minor. This is not only in accordance with the ancient and traditional theory that minors are wards of the court, it is required by specific language of the statute. By the Juvenile Court Act, as well as by the adoption statute, we are required to consider the best interests of the child. Ill. Rev. Stat. 1973, ch. 37, par. 701—2(3)(c); also ch. 4, par. 9.1—20a.

One further caveat is important. In these cases involving the welfare of a child, we cannot deal with fixed standards or search for completely binding precedent. Cases of this type are in effect sui generis and each of them must be decided in accordance with the particular facts of each individual and varying situation. See *In re Interest of Stacey*, 16 Ill.App. 3d 179, 183, 305 N.E.2d 634, involving determination of removal of a neglected child from parental custody. Analysis of the evidence before us is thus of prime importance.

The petition alleged that the respondent had failed to maintain a reasonable degree of interest, concern and responsibility as to the welfare of the minor children. The respondent here has never had custody of these children from May 31, 1967, the date of their birth. Approximately 2 months after their birth, and while the children still remained in the Cook County Hospital where they were born, after a full hearing, the court determined that these minors were neglected children who should be taken from the custody of their parent.

■■ Thereafter, respondent did not visit or see her children until May of 1972. There is no proof in this record that she had any type of communication or contact with the children from the very date of their birth until May of 1972; a period of approximately 5 years. Her next visit with her children was June of 1972. On both of these occasions, she saw them at the home of Haddie Boone. Visitation of once per year continued in 1973 and in 1974. On two occasions she bought gifts for the children. It

is true that traveling from respondent's home to the children's foster home in Harvey may have caused the respondent some difficulty as well as expense. However, it can hardly be said that these factors should excuse her from her palpable lack of a reasonable degree of interest, concern or responsibility for their welfare in accordance with the statutory standard.

It is true that with the aid of her counsel respondent attempted to put the situation in the best possible light from her point of view. She testified that she was under the impression, received from case workers, that she could not obtain custody of the children unless she first had a job and then a larger apartment. She testified generally regarding four or five occasions on which she called the children on the telephone on Saturdays and had no response. These efforts cannot prevail against her obvious lack of fulfillment of the statutory requirements.

We do not wish to be understood as to making personal criticism of the respondent. She is a person with a high school education who gave birth to these twins when she was approximately 20 years old or less. She has obviously experienced difficulty and hardship in making her own way in the world. It is clear that she works hard for a meager wage and her problems are undoubtedly manifest.

■ We have read the entire record and we are impressed with the careful manner in which the case was heard in the trial court. It is not superficial rhetoric for us to state that we must give great weight to the result reached by the trial court where the witnesses were seen and observed. In our opinion, the result reached here is supported by clear and convincing evidence and it is our duty to accept it. See *In re Gonzales*, 25 Ill.App.3d 136, 144, 323 N.E.2d 42, and cases there cited.

Counsel for both sides have cited a number of legal authorities. We cannot say that any of them is so close to the case before us that it constitutes complete and binding authority. Under these circumstances, there is no need to analyze the authorities or the various attempted differentiations advanced by each side in each instance. Perhaps the closest case on the facts is *In re Interest of Perez*, 14 Ill.App.3d 1019, 304 N.E.2d 109. However, as above pointed out, we are impelled to concluded on all of the facts before us that the opinion of the trial judge is correct and it is accordingly affirmed.

Judgment affirmed.

BURKE, P. J., and EGAN, J., concur.