THE PEOPLE *ex rel.* TONYA ROCHELLE PATTERSON, a Minor, Plaintiff-Appellee, *v.* JEARLEAN PATTERSON, Defendant-Appellant.

Fourth District No. 13037

Opinion filed March 11, 1976.

Burger, Fombelle & Wheeler, P.C., of Decatur (David A. Dvorak, of counsel), for appellant.

Basil G. Greanias, State's Attorney, of Decatur (Jerry Finney, Assistant State's Attorney, of counsel), for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

On February 13, 1974, a supplemental petition was filed in the Circuit Court of Macon County by Basil Greanias, the State's attorney of that county, alleging that Tonya Rochelle Patterson had previously been declared to be a neglected minor and that her parents were unfit. The petition prayed that a guardian be appointed with power to consent to her

adoption. After hearing, an order was entered on September 6, 1974, re-affirming the neglect finding previously made, finding the parents to be unfit and terminating the rights of the parents. The cause was set for dispositional hearing on September 27, 1974. On that date, Richard S. Laymon, guardianship administrator of the State Department of Children and Family Services, who had previously been appointed guardian of the person of the child was reappointed with power to consent to the child's adoption. Respondent Jearlean Patterson, mother of the child, appeals. We affirm.

Tonya is one of 10 children of the respondent-mother. On November 30, 1967, Tonya, together with eight of her brothers and sisters, were declared to be neglected minors. At that time she was 6 months old. An assistant probation officer of the county was appointed guardian and the child was permitted to continue to live with her mother. The guardian was changed several times. In early 1972 the court ordered that the child be removed from the home of the mother and after a short stay in a foster home, in June, 1972, was ordered placed at the Baby Fold in Normal. That institution had special services to deal with children with speech difficulty. Tonya had such a problem, apparently caused by a cleft palate. Prior to the entry of decree, Tonya was placed in a foster home.

Section 5—9(2) of the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 705—9(2)) provides that pursuant to an appropriate petition, the court may appoint a guardian for a ward of the court with power to consent to adoption if the court finds that the parents consent or that a nonconsenting parent is "unfit." Unfitness is to be determined by the provisions of the Adoption Act (Ill. Rev. Stat. 1973, ch. 4, par. 9.1—1 *et seq.*). Section 1D (par. 9.1—1D) of that act defines as a grounds of unfitness of a parent "(b) Failure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." The foregoing was the grounds of unfitness of respondent Jearlean Patterson alleged by the supplemental petition and found by the court.

■■ The respondent-mother relies on *In re Deerwester*, 131 Ill. App. 2d 952, 267 N.E.2d 505, in support of her claim that the evidence was insufficient to support the finding made. There three handicapped children of divorced parents were made wards of the court. The child in question, like Tonya here, had a speech problem and was placed at the Baby Fold in Normal. The mother lived in Bloomington. After nearly 2 years at the Baby Fold, the child was placed in a foster home in Shelbyville some 80 miles from Bloomington. During a subsequent period of nearly 2 years, the mother visited the child only once, early in his stay at Shelbyville. There, as in the instant case, the Baby

Fold required that parents' visitation arrangements be made through the placing agency. The Department of Children and Family Services making placement there appears to have required that visitation be made on weekdays. The mother worked on weekdays and claimed to have no transportation except by riding with people also employed during the week. Although the mother's work schedule made it difficult for her to do so the evidence was clear that the mother had constant contact with the assigned caseworker about the child and was trying to arrange visits. This court noted the now well-established rule that clear and convincing evidence is necessary to establish unfitness. (*In re Shuman*, 22 Ill. App. 3d 151, 319 N.E.2d 287). The evidence was held to be insufficient to support a finding that the mother had failed to maintain a reasonable degree of interest, concern, or responsibility for the child's welfare.

In *In re Grant*, 29 Ill. App. 3d 731, 331 N.E.2d 219, on the other hand, the court found the evidence sufficient to support such a finding. Twin children had been taken from the mother at birth. The mother lived in Chicago and the children were placed in a foster home in Harvey. The mother visited only four times in 7 years. She did telephone the children and sent some gifts. The mother indicated that a social worker had led her to believe that she could not get the children back unless she made more money and got a bigger apartment. The court ruled that although the evidence showed that the mother had undergone hardship, the evidence was sufficient to support the finding of unfitness.

In the instant case, the mother visited Tonya only once in the more than 2-year period from the child's removal from her home until decree. That visit occurred in June, 1972, shortly after the child had returned from cleft palate surgery at Barnes Hospital in St. Louis. The mother was returning to Decatur from her daughter's wedding in Peoria. The person in charge at the Baby Fold told the mother to make arrangements for future visits through the Macon County probation office. The mother did not testify to any attempt to contact the probation office to make subsequent visitation. Etta L. Truex, the probation officer who had responsibility for the case until the fall of 1972, testified that the mother did not contact her about visitation and as far as she knew no one else was contacted by the mother in this regard. Mrs. Truex stated that she went to the mother's home on two occasions prior to the child's hospitalization at St. Louis. The mother responded to a knock on the door by coming to the window but would not open the door. David Bailey, the caseworker of Department of Children and Family Services assigned to the case beginning in April, 1973, stated that the mother had contacted him twice. In June, 1973, she came to his office

and told him that she wanted her girls returned. She said did not want her boys because they ate too much. He advised her to try to find work and to stabilize her situation. No request was made to visit Tonya. Upon Bailey's request, she gave him an address at which she could be reached. He tried to find her at that address but found she was not living there. In January, 1974, the mother also came to Bailey's office to see about the return of one of her sons, Stanley. Bailey stated that there was no discussion of Tonya. Upon Bailey's request, the mother again stated that she was living at a place which upon investigation turned out to be incorrect.

The mother testified that she was unemployed most of the time. She had obtained one job but quit because she could not live on the pay. She indicated that she lived largely on general assistance provided by the township. She wished to get her children back and live with them supported by A.D.C. She, as did the mother in *Grant*, understood the caseworker to tell her that getting work would be a condition of getting her children back.

This case differs from *Deerwester* in that there the mother's work schedule inhibited the mother arranging visits and actually visiting whereas here the mother was apparently available during weekdays. The decisive difference, however, is that in *Deerwester*, the mother fully cooperated with the caseworkers thereby showing responsibility for the child's welfare and demonstrating her interest and concern. Here very little responsibility was shown. Rather than cooperating with the caseworkers, the mother appeared to be hiding from them, appearing periodically to make requests. As in *Grant* we must recognize the hardship of one in the mother's position. As in that case, however, we find the evidence to be sufficient to support the finding of the trial court that the mother was unfit.

■■ The respondent-mother also claims that the order of September 27, 1974, whereby the finding of unfitness of the parents was made also made a finding, not supported by the evidence, that Tonya was a neglected child. That order, however, found that she had been "heretofore found to be neglected." That finding had been made by the court's order of November 30, 1967, which made the child a ward of the court. Such an adjudication is a final order (Ill. Rev. Stat. 1967, ch. 37, par. 704—8(3)). No appeal having been taken from that order, the finding is res judicata.

For the reasons stated, we affirm.

Affirmed.

CRAVEN, P. J., and SIMKINS, J., concur.