*In re* ELECE GATES, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* SUSIE GATES, Respondent-Appellant.)

Fifth District   No. 76-544

Opinion filed February 10, 1978.

George Parker, of Land of Lincoln Legal Assistance Foundation, Inc., of East St. Louis, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Bruce D. Irish and Martin N. Ashley, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:
This is an appeal from an order of the Circuit Court of St. Clair County

finding Elece Gates to be a neglected child, terminating the parental rights of Elece's natural mother, Susie Gates, and appointing Richard S. Layman as the child's guardian, with the power to consent to adoption.

Appellant, Susie Gates, contends that the trial court erred in admitting certain evidence designed to establish that Elece was a neglected child, and further contends that the evidence was insufficient to establish neglect. Additionally, the appellant urges that the portion of the order terminating her parental rights and giving the appointed guardian the power to consent to adoption must be reversed because the issue of unfitness was prematurely considered at the adjudicatory stage of the proceeding and because the evidence was insufficient to establish unfitness.

Elece Gates was born in Centreville Township Hospital, St. Clair County, Illinois, on August 4, 1975, with only one lung and an incomplete esophagus. The following day she was transferred to Cardinal Glennon Hospital in St. Louis, Missouri, in order to undergo an operation in which an opening was created in her neck and in the proximal pouch of her esophagus. This procedure made it possible to drain saliva which would otherwise have filled the child's lung. In addition, Elece can now be fed through a tube which must be inserted through the opening in her neck and placed in her stomach. The tube must be carefully placed to avoid aspiration and must be frequently cleansed to avoid infection. Elece was released from Cardinal Glennon on October 2, 1975, but continues to require almost constant care to enable her to survive. Although the record is somewhat unclear on this point, it appears that prior to Elece's release, the appellant signed a consent form authorizing the Department of Children and Family Services to place the child in a foster home. Pursuant to this authorization, Elece was taken from the hospital to the home of Duane and Rita Maxwell, located on Scott Air Force Base. Mr. and Mrs. Maxwell are surgical technicians and were trained to care for Elece before she was released into their custody.

On October 6, 1975, a petition was filed alleging that Elece Gates was a neglected child in that the appellant had failed to cooperate with the hospital staff in its attempts to train her to care for the child's special needs.[1] By agreement of the parties, the petition was amended to allege that Elece was a minor in need of supervision.[2] Pursuant to this

---

[1] Section 2—4 of the Juvenile Court Act provides, in relevant part, that:

"(1) Those who are neglected include any minor under 18 years of age

(a) who is neglected ° ° ° as to medical or other remedial care recognized under State law or other care necessary for his well-being, ° ° ° or

(b) whose environment is injurious to his welfare ° ° °." (Ill. Rev. Stat. 1975, ch. 37, par. 702—4.)

[2] The portion of section 2—3 of the Juvenile Court Act which is relevant here provides that, "[t]hose otherwise in need of supervision include (a) any minor under 18 years of age

agreement, the court entered an order on October 28, 1975, finding Elece to be a minor in need of supervision on the grounds that the appellant could not properly care for her. The order also adjudged Elece to be a ward of the court, appointed Richard S. Layman, in his capacity as guardianship administrator for the Department of Children and Family Services, as the child's guardian without the power to consent to her adoption, and set the case for further review on April 27, 1976.

A hearing was apparently conducted on April 27, 1976, at which time the appellant was given visitation rights of some kind. However, a petition was subsequently filed on July 26, 1976, seeking a declaration that Elece Gates was a neglected child on the grounds that the appellant had failed to express proper interest in her, and had not only failed to obtain the training necessary for Elece's survival, but had also refused such training when it was offered to her. The petition further requested that Elece be adjudged a ward of the court, that the appellant be declared an unfit parent for failure to make reasonable efforts to correct the conditions which had been the bases for the order of October 28, 1975, and that Richard S. Layman be appointed guardian with the power to consent to adoption. The relevant evidence adduced at the hearing conducted on September 17, 1976, is briefly summarized below.

The appellant is the mother of nine children, six of whom live with her at her home where they are supported by public aid. The appellant testified that she visited Elece in the hospital four or five times between August 12, 1975, and October 2, 1975, explaining that the responsibility of caring for six children at home and the lack of transportation to the hospital prevented her from visiting Elece more frequently. Although members of the hospital staff offered to teach the appellant the techniques necessary to feed and otherwise care for her child, the appellant made no attempt to learn them.

Carlos Redd, a social worker employed by the Department of Children and Family Services, testified that the appellant was generally unable and unwilling to receive the training necessary to care for her child. He stated that on two occasions in September 1975 he had explained to the appellant that it was essential that she cooperate with the hospital staff in its efforts to train her to care for her child. Redd testified that after the child was placed with the Maxwells he often encouraged the appellant to visit Elece and that he had told her he would attempt to provide transportation whenever necessary. He stated that he had initially suggested to the appellant that she visit Elece twice a month at the Maxwells' home, but that she had told him babysitting problems with her other children would prevent so frequent a visitation schedule. Redd testified that of the 11 visits he scheduled between October 1975 and April

who is beyond the control of his parents, guardian or other custodian ° ° °." (Ill. Rev. Stat. 1975, ch. 37, par. 702—3.)

1976, the appellant had cancelled six, and that he had personally transported the appellant on the five occasions during this period she visited Elece. On two of the five visits which the appellant made during this period she attempted to feed Elece through the tube in her neck. Both of these attempts were unsuccessful, however, because the appellant could not properly position the tube without causing the child to begin coughing and choking.

Father George Shoup, a doctor who specializes in surgery, testified at the hearing that Elece's condition could eventually be corrected to some degree through a surgical procedure in which a portion of her colon would be removed and used to complete her esophagus, thereby completing the connection between her mouth and stomach. If the surgery were successful, it would enable Elece to feed herself in a normal manner. The surgery described above is usually performed upon children between the ages of 18 months and two years. Father Shoup further stated that even after a successful operation of this kind the child would require special care, although his only specific example of such care was that the child would have to be X-rayed once a year.

On September 24, 1976, the trial court entered the order which is the subject of this appeal.

■■ In the instant case, the order filed on October 28, 1975, finding that Elece Gates was a minor in need of supervision was based solely upon the appellant's failure to learn the skills necessary to insure her daughter's survival. We initially question the propriety of the finding that Elece was a minor in need of supervision within the meaning of section 2—3 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 702—3). That section speaks of minors who are addicts, truants, or otherwise beyond the control of their parents or guardian; it would not seem to us to be generally applicable to a three-month-old child with critical medical needs. Although there is nothing in the record indicating the reasons for the parties' agreement to amend the State's petition, the resolution we necessarily reach on the question of whether Elece Gates is a neglected child may shed some light on the parties' decision.

The appellant initially contends that the trial court erred in its adjudication that Elece was a neglected child, and further contends that the lower court's admission of evidence of neglect prior to October 28, 1975, was improper.

The appellant advances the rather novel argument that given the definition of neglect in the Juvenile Court Act, and the context in which it is judicially applied, it was error for the trial court to have found that Elece Gates was neglected after October 28, 1975. According to section 2—4 of the Juvenile Court Act, the term "neglected minor" includes, *inter alia*, minors who are neglected as to medical or other necessary care,

minors who have been abandoned, and minors who are living in environments injurious to their welfare (Ill. Rev. Stat. 1975, ch. 37, par. 702—4). In this case, the appellant realized that she was unable personally to care for her child and, thus, relinquished custody. Such conduct may be indicative of proper concern for the welfare of the child rather than neglect. The appellant points out that Elece was placed in a good foster home after October 28, 1975, where she always received excellent care in every respect. The appellant urges that it is incongruous that Elece be found to be a neglected child during a period of time when an agency of the State had been given responsibility for her care and custody, when she was a ward of the court, and when she had not lacked proper or necessary support or medical care.

The State contends that if the actual condition of the child is the only factor to be considered in determining neglect, it then becomes virtually impossible to prove that a parent has neglected his or her child when the child, in fact, is living in a good foster home. The State urges us to reject such a restrictive reading of section 2—4 and to hold that in failing to learn the techniques necessary to care for Elece, the appellant was guilty of neglect.

■■ In resolving this question we are mindful that neglect is not a term of fixed and measured meaning, that it takes its content from special circumstances, and that its meaning varies as surrounding circumstances do. (*People ex rel. Wallace v. Labrenz*, 411 Ill. 618, 624, 104 N.E.2d 769, 773 (1952).) We are also aware that cases which concern the welfare of a child are *sui generis* and must be decided in accordance with the particular facts of each situation. (*In re Grant*, 29 Ill. App. 3d 731, 331 N.E.2d 219 (1st Dist. 1975).) Moreover, we are cognizant of the fact that the general purpose of the Juvenile Court Act is the furtherance of the best interest of the child (Ill. Rev. Stat. 1975, ch. 37, par. 701—2(1)). Nevertheless, we are bound by the principle that statutes must be interpreted according to legislative intent, which, in turn, must be ascertained primarily from a consideration of the statutory language itself. (*Franzese v. Trinko*, 66 Ill. 2d 136, 361 N.E.2d 585 (1977).) Section 2—4 clearly requires the court to determine whether a child is neglected, that is, whether the child is receiving the care necessary for his well being, and not necessarily whether the parents have been neglectful.

■■ The application of this interpretation of section 2—4 to the evidence presented by the State on the question of the neglect of Elece prior to the October 28, 1975, hearing where she was found to be a minor in need of supervision renders it unnecessary for us to determine whether the admission of that evidence by the trial court violated principles of res judicata. With the required focus on the actual condition of the child under section 2—4 it should be abundantly clear that Elece could not have

been a neglected child, absent allegations to the contrary, prior to the date she was placed with the Maxwells because from the date of her birth until her placement she was under the constant, and presumably excellent, care of the hospital staff. In the instant cause, unlike the case of *People ex rel. Wallace v. Labrenz,* 411 Ill. 618, 104 N.E.2d 769 (1952), where a hospitalized infant was found to be neglected, there was no evidence that the appellant in any way interfered with or attempted to frustrate the efforts made to care properly for the medical needs of Elece.

It was perhaps this very problem in statutorily categorizing Elece's situation which led to the decision by the State to amend its petition to allege that the child was a minor in need of supervision upon which the October 28, 1975, finding was based. The only other provision under the Juvenile Court Act that would appear to have been available was an adjudication that Elece was a dependent minor under section 2—5 (Ill. Rev. Stat. 1975, ch. 37, par. 702—5). However, a finding under the applicable subsection of that provision would have required a desire on the part of the appellant to be relieved of all of her parental rights and responsibilities concerning Elece (Ill. Rev. Stat. 1975, ch. 37, par. 702—5(1)(c)). No such desire on the part of the appellant, at that point in time, is indicated in the record. Though we are cognizant of the problems presented by the factual situation in this cause, we are compelled to conclude that any inadequacy in this statutory scheme must be remedied by the legislature.

Although the finding that Elece Gates was a neglected child must be reversed, we feel that the trial court possessed jurisdiction to terminate appellant's parental rights and to invest the child's guardian with the power to consent to adoption. Under section 5—11 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 705—11) an adjudication of wardship remains in effect until the minor reaches the age of 21. Section 5—2(3) of the Act (Ill. Rev. Stat. 1975, ch. 37, par. 705—2(3)) provides that an order of disposition is subject to modification until final closing and discharge of the proceedings under section 5—11. Once a minor has been found to be in need of supervision and adjudged a ward of the court, the court may then grant custody of the minor to certain specified individuals and agencies and appoint a legal guardian. (Ill. Rev. Stat. 1975, ch. 37, par. 705—9.) The court may authorize the legal guardian to consent to the adoption of the minor. Thus, the court's order of October 28, 1975, adjudging Elece Gates a ward of the court remained in effect, and the disposition provided therein was subject to modification. We think that the petition filed on July 26, 1976, may properly be treated as a petition to modify the earlier order of disposition.

Because we view the hearing conducted in this case as dispositional only, we need not consider appellant's contention that the Juvenile Court

Act requires separate adjudicatory and dispositional hearings in all cases. We note, however, that although the Juvenile Court Act clearly provides for separate hearings (see Ill. Rev. Stat. 1975, ch. 37, pars. 704—6, 704—8, 705—1), the power of the court to conduct simultaneous hearings has been implicitly recognized in decisions analyzing the admissibility of evidence in such hybrid proceedings. See *People ex rel. Jones v. Jones,* 39 Ill. App. 3d 821, 350 N.E.2d 826 (5th Dist. 1976); *People v. Brady,* 7 Ill. App. 3d 404, 287 N.E.2d 537 (4th Dist. 1972).

According to section 5—9(3) of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 705—9(3)), a nonconsenting parent must be found unfit under the provisions of the Adoption Act (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—1 *et seq.*) before the court may authorize the appointed guardian to consent to the adoption of the minor. Additionally, by the Juvenile Court Act, as well as by the Adoption Act, we are required to consider the best interests of the child (Ill. Rev. Stat. 1975, ch. 37, par. 705—9(2), also ch. 4, par. 9.1—20a). A finding of unfitness as the basis for termination of parental rights must be supported by clear and convincing evidence (*In re Ybarra,* 29 Ill. App. 3d 725, 331 N.E.2d 224 (1st Dist. 1975)) and will not be disturbed by the reviewing court unless palpably against the manifest weight of the evidence (*In re Ice,* 35 Ill. App. 3d 783, 342 N.E.2d 460 (3d Dist. 1976).)

The petition involved in the instant cause alleged that the appellant was unfit because of her failure to make reasonable efforts to remedy the conditions which were the bases of the original removal of the child from her parents (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—1(D)(l).) The trial court's finding of unfitness was apparently based on this provision as well as on section 1(D)(b), which deals with the failure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—1(D)(b)).

■■ We find the evidence of the appellant's failure to maintain a reasonable degree of interest, concern or responsibility as to Elece's welfare insufficient, of itself, to support a finding of unfitness. Between October 2, 1975, and May of 1976, the appellant visited Elece a total of five times. Cases which have upheld trial court findings of unfitness have generally involved a more prolonged period of inattention. (See, *e.g., People ex rel. Patterson v. Patterson,* 36 Ill. App. 3d 484, 344 N.E.2d 226 (4th Dist. 1976) (one visit in two years); *In re Ice,* 35 Ill. App. 3d 783, 342 N.E.2d 460 (3d Dist. 1976) (five years); *In re Einbinder,* 31 Ill. App. 3d 133, 334 N.E.2d 187 (1st Dist. 1975) (nine years); *In re Perez,* 14 Ill. App. 3d 1019, 304 N.E.2d 109 (1st Dist. 1973) (five years).) Considering the financial condition of her family, their lack of personal transportation, and the necessity of caring for her remaining children; we believe that the appellant's failure to visit Elece more frequently is excusable and renders

the evidence of her lack of interest insufficient to justify the termination of her parental rights. See *In re Massey,* 35 Ill. App. 3d 518, 341 N.E.2d 405 (4th Dist. 1976); *In re Overton,* 21 Ill. App. 3d 1014, 316 N.E.2d 201 (2d Dist. 1974); *In re Deerwester,* 131 Ill. App. 2d 952, 267 N.E.2d 505 (4th Dist. 1971), for similar holdings.

Section 1(D)(*l*) of the Adoption Act provides that the failure to make reasonable progress towards the correction of the conditions which were the basis for the original removal is sufficient to support a finding of unfitness. (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—1(D)(*l*).) This subsection has recently been interpreted as being a legislative recognition of the problems in producing clear and convincing evidence of unfitness within the other specific statutory provisions and an intention to give greater protection to the best interests of the child. (*In re Massey.*) In *Massey,* the reason for the removal of the child as recited in the original decree was that she was not being properly cared for because of a medical handicap she had since birth. In interpreting section 9.1(D)(*l*) the court stated:

> "The essence of section 1(D)(*l*) is that the parents whose child has been taken from their custody to protect the child are unfit if they do not make reasonable efforts to change themselves and their circumstances so that they can give the child the care it needs. If they fail to do this adoption of the child should be permitted *if the child's best interests so require.*" 35 Ill. App. 3d 518, 523, 341 N.E.2d 405, 409.

The *Massey* court found that the evidence presented to the lower court was sufficient for the court to find that the parents had failed to make reasonable efforts to prepare themselves to give the child the care that she did not receive as a baby and would need if returned to the parents' home.

■■ In the instant cause, the appellant's failure to learn to care for the medical needs of Elece led to the original order finding her to be a minor in need of supervision and declaring her a ward of the court. In the ensuing months, the appellant made no effort to undergo training by the hospital personnel or by the Maxwells even though such training was offered. On two occasions she attempted to feed Elece, once causing a coughing spell because of her inability to properly position the feeding tube. In addition, the appellant's failure to arrange more frequent visits with her child, although insufficient to establish unfitness by reason of lack of interest, may be considered in assessing her progress toward the correction of the conditions which led to the original decree. (*In re Massey.*) These factors were sufficient to support the trial court's findings that the appellant was unfit.

■■ Viewing the evidence as a whole, we cannot say that the trial court erred in ordering that the appellant's parental rights be terminated

and that the appointed guardian be given the power to consent to the adoption of Elece. It is not the function of this court to substitute its judgment for that of the trial court. The trial court was in the best position to observe the appellant and to give consideration to the evidence presented; unless the trial court's findings and order are contrary to the manifest weight of the evidence, the trial court's determination should not be disturbed. *In re Garmon,* 4 Ill. App. 3d 391, 395, 280 N.E.2d 19, 22 (4th Dist. 1972).

For the foregoing reasons we affirm the dispositional order of the Circuit Court of St. Clair County terminating the parental rights of Susie Gates and granting Richard S. Layman, in his capacity as guardianship administrator for the Department of Children and Family Services and guardian of Elece Gates, the power to consent to Elece Gates' adoption; but we reverse that part of the order of the circuit court finding Elece Gates to be a neglected child.

Affirmed in part; reversed in part.

JONES and G. J. MORAN, JJ., concur.