62 Ill. App.3d 927 (1978)
378 N.E.2d 565
In re CHARLES TOLBERT et al., Minors.  (THE PEOPLE ex rel. THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Petitioner-Appellee,
v.
MARIE TOLBERT, Respondent-Appellant.)
No. 77-476.
Illinois Appellate Court  Fifth District.
Opinion filed June 30, 1978.
Dolores J. Johnson, of Johnson & Johnson, of Metropolis, for appellant.
Bruce D. Irish, State's Attorney, of Mt. Vernon (Martin N. Ashley, of State's Attorneys Appellate Service Commission, of counsel), for appellee.
Order affirmed.
Mr. JUSTICE KARNS delivered the opinion of the court:
Marie Tolbert appeals an order of the Circuit Court of Hardin County declaring her an unfit parent, terminating her parental rights to Charles, John, Carmen, and Robert Tolbert, and appointing a guardian empowered to consent to their adoption.
On October 21, 1975, Mary Gullo of the Department of Children and Family Services filed a petition requesting that the children be adjudged wards of the court. This petition was amended on December 10, 1975, and on March 4, 1976. The final petition alleged that Marie Tolbert had "failed to maintain a reasonable degree of interest, concern or responsibility as to her children's welfare and shown substantial neglect of the children." The petition listed as particulars that Charles was not in school, that respondent refused to have the children innoculated, that the children suffered from malnutrition, that respondent failed to provide the children adequate medical care, and that Carmen and John were anemic.
At the adjudicatory hearing Dr. Kimbel Ewall testified regarding the medical care of the Tolbert children. He had delivered Carmen in 1973 *928 but had not seen her again until December of 1975. His diagnosis at that time had been that she was suffering from malnutrition, severe iron deficiency anemia, severe asteatosis, round worm and hook worm. His report indicated a suspicion that she was a neglected child. He admitted her to a hospital and her condition, including her lethargy and unwillingness to speak, improved. Had she not been treated, she could have experienced a cardiac failure which would have endangered her life.
Dr. Ewall stated that John was in fairly good condition but showed signs of malnutrition. He had multiple skin lesions which appeared to be insect bites, small lacerations with superficial infections, a large ringworm on his hand, and some mild dental caries. Dr. Ewall believed that Robert's social development was retarded. Upon further examination, however, after Robert had temporarily been placed in a foster family and had begun to receive treatment, his condition improved markedly and Dr. Ewall observed that, contrary to his original opinion, John did not appear retarded in any way and seemed in fact of above average intelligence.
Charles Tolbert was nonverbal and appeared to Dr. Ewall to be perhaps chronically ill. An examination disclosed, however, that he had no afflictions or gross abnormality, although he did have round worms and his blood count showed signs of possible parasitic infection. Robert Tolbert was in fairly good health. He had impetigo on the buttocks secondary to urine excoriation, which Dr. Ewall noted might have been caused by wet diapers, and mild anemia. He also had pin worms. None of the children had received the standard childhood innoculations.
The testimony of Dr. Fransisco Villanueva concerning his examination of the children did not contradict in any significant way that of Dr. Ewall.
Mary Gullo, a social worker for the Department of Children and Family Services, then testified. She had visited Marie Tolbert several times at home. She lived in two small separate trailers, three rooms in all, with no bathroom, electricity, or running water. Debris was piled up around the outside of the trailers and the children, except Robert, were very dirty and ill-kept. There were flies swarming and several dogs outside the trailers. Gullo observed that the children had had bloated stomachs and were pale; Carmen was particularly listless. Gullo attempted to convince Marie Tolbert to take the children to a doctor but she refused to do so because she believed nothing was wrong with them. In October of 1975, under pressure from the state's attorney, whom Gullo had contacted, Marie Tolbert took the children to Dr. Villanueva for a checkup. Gullo had not visited respondent's home since August 1975, because respondent had clenched her fists and caused Gullo to fear she would be struck. In Gullo's opinion Marie Tolbert loves her children but is incapable of providing adequate care for them.
The next witness was Ailene Donithan, who had been the Department *929 of Public Aid caseworker assigned to Marie Tolbert. When visiting Marie Tolbert, she had noticed disposable diapers and other garbage strewn around the area outside the trailer. Donithan's opinion was that Marie Tolbert loved her children but did not see the need for education and cleanliness.
Jane Williams, formerly public health nurse for Hardin County, testified that she saw respondent frequently between 1969 and 1975 in the course of giving her mother insulin shots. Respondent rejected Williams' suggestions that the children could be immunized for free and that respondent should sign up for a supplemental food program.
Marie Tolbert was the first witness for the respondent. She described her domestic routine at the time she lived in the trailer. She carried well water three times a day, cut wood, cooked on a range stove with wood, and kept perishables in an ice cooler. Her only income was $190 Aid to Dependent Children and social security. When John was a baby she had taken him to the doctor because he had digestive problems and he was operated on. She testified that she sought medical attention for her children whenever she felt they needed it. She stated that she would have taken the children to the doctor at Gullo's suggestion if Gullo had not pressed her to do so. She testified that she wanted her children and could adequately take care of them.
The next witness was respondent's mother, Pauline Palmer. She said that Marie Tolbert cleaned the trailers often, cooked good meals, and bathed the children twice a day. In her opinion the children were always healthy and active.
At the close of respondent's evidence, the court found the children to be neglected and adjudged them wards of the court.
On June 21, 1977, the dispositional hearing was held. At that time the court found the putative fathers, who had received notice of these proceedings and had waived whatever rights they may have had, to be unfit by reason of abandonment. After hearing some testimony of a cumulative nature the court found respondent an unfit parent because she failed to protect her children from conditions of their environment injurious to their welfare. The court then appointed a guardian to consent to the adoption of the children.
Marie Tolbert asserts on appeal that the trial court erred in adjudging her an unfit parent. We disagree.
Once there has been a finding of neglect and a child has been adjudged a ward of the court pursuant to the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 701-1 et seq.) the proceedings by which parental rights are terminated are governed by the Adoption Act (Ill. Rev. Stat. 1975, ch. 4, par. 9.1-1 et seq.). The Juvenile Court Act provides that a guardian with power to consent to adoption may be appointed only if the court *930 finds a nonconsenting parent to be unfit, as defined by the Adoption Act; the court must also determine whether it is in the best interests of the child to be adopted (Ill. Rev. Stat. 1975, ch. 37, par. 705-9). Section 1D of the Adoption Act defines an "unfit person" by listing the following bases for a finding of unfitness:
"* * *
(b) Failure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare;
* * *
(f) Failure to protect the child from conditions within his environment injurious to the child's welfare;
* * *." Ill. Rev. Stat. 1975, ch. 4, pars. 9.1-1D(b) and (f).
In order to affirm the order of the trial court, we must find that the record shows clear and convincing evidence that respondent is an unfit parent. (In re Gates, 57 Ill. App.3d 844, 851, 373 N.E.2d 568, 574 (5th Dist. 1978).) Respondent alleges that the State wants to terminate her parental rights because she is too poor to obtain electricity and plumbing and because she is intransigent in refusing to cooperate with the social workers of the various state agencies who over the years have tried to tell her what to do. She asserts that, with the exception of Carmen, her children are in good health and that she has provided medical care for them whenever necessary.
 1 Although respondent's independence is admirable we do not believe that the factors she raises were those which were crucial in the trial court. To us, as to the trial court, the primary, perhaps the sole, issue in the determination of respondent's fitness as a parent is the health of her children. This problem is reflected in their malnutrition and their worm infestations which are the product of unsanitary conditions. It is readily conceded by all involved that Marie Tolbert loves her children and has never abused them. Nevertheless, we must hold that the record discloses clear and convincing evidence that she failed to protect the children from conditions in their environment which are injurious to their welfare.
One further point, however, must be answered. Respondent contends that In re Hurley, 44 Ill. App.3d 260, 357 N.E.2d 815 (2d Dist. 1976), and In re Taylor, 30 Ill. App.3d 906, 334 N.E.2d 194 (1st Dist. 1975), stand for the proposition that the focus of our inquiry should be not on the success of her efforts but rather on the fact that she did try. We see no application of those cases to the present case. In Hurley and Taylor the efforts in question were to contact children in the custody of foster parents and the efforts were frustrated by the Department of Children and Family Services and others. In other words, the failure to make contact or visit the children was held not to be indicative of a lack of interest. In the area of health, however, results are paramount. Whatever the reason, upon *931 review of the evidence, it cannot be denied that Marie Tolbert failed to protect her children's health.
 2 Both sides cite numerous cases for their positions. However, cases which concern the welfare of children are sui generis. (In re Gates, 57 Ill. App.3d 844, 849, 373 N.E.2d 568, 573 (5th Dist. 1978).) Therefore, for the reasons stated above, we affirm the order of the Circuit Court of Hardin County.
Affirmed.
EBERSPACHER, P.J., and G.J. MORAN, J., concur.