128 Ill. App.3d 449 (1984)
470 N.E.2d 1300
In re T.E., a Minor (The People of The State of Illinois, Petitioner-Appellee,
v.
Lela Sandvik et al., Respondents-Appellants.
No. 5-83-0611.
Illinois Appellate Court  Fifth District.
Opinion filed November 9, 1984.
Michael F. Dahlen, of Feirich, Schoen, Mager, Green and Associates, of Carbondale, and William J. Bohler, law student, for appellants.
Randy Patchett, State's Attorney, of Marion (Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Service Commission, of counsel), for the People.
Orders affirmed.
JUSTICE KARNS delivered the opinion of the court:
Lela Sandvik and William Craft, parents of the minor child T.E., appeal from an order of adjudication declaring them to be unfit and from a dispositional order terminating their parental rights. Appellants contend that the trial court's finding of unfitness is against the manifest weight of the evidence.
T.E. was born on January 25, 1981, and left the hospital in good health. Within a short time she was readmitted to the hospital with double pneumonia, severe, bleeding diaper rash, and thrush. During the infant's stay in the hospital, the State filed a petition for adjudication of wardship. On March 26, 1981, T.E. was adjudicated a neglected minor and was placed in the custody of the Illinois Department of Children and Family Services (DCFS). The testimony had demonstrated that the child's current living environment was injurious, largely because the mother's mental incapacity limited her ability to properly care for the baby. Thereafter, DCFS implemented a program *450 of visitation and training in the parents' home on a regular basis. During the child's weekly visits (which on occasion were prevented by cancellation, illness or bad weather), the mother was instructed and assisted in appropriate child care.
At a dispositional hearing on December 17, 1981, evidence was taken which demonstrated a lack of improvement in the mother's ability to care for her daughter. Her in-court failure to mix the baby's formula despite continuous instruction exemplified her ineptitude. Additionally, DCFS personnel testified that the home situation remained unimproved and injurious to the child's well-being. The court ordered continued custody with DCFS and an extension of training and visitation for the parents.
Subsequently, and up to the time of the final dispositional hearing, DCFS maintained efforts to teach the parents how to care for their child. Regular supervised visits continued, during which a DCFS homemaker instructed the parents and observed their interaction and efforts with the child. A "four-level program" was instituted in February 1982, designed with the goal of T.E.'s eventual return to the parents. Progress was charted and discussed with the parents regularly. The record indicates that by the spring of 1983 the parents had failed to progress beyond "level one," which required the minimal display of proper feeding, bathing, clothing, and appropriate affection, all achievable with supervision and assistance by the homemaker. Higher levels would have included longer and unsupervised visits.
The dispositional hearing held on May 27 and June 9, 1983, involved testimony of DCFS employees concerning the home situation since December 1981. The absence of improvement in the mother's ability and in the living conditions in general were described. The DCFS homemaker stated that necessary items of food and clothing were often unavailable even when the parents expected a home visit and had been instructed as to items required for the child. For example, newborn booties and size five clothing were intended for T.E., a toddler, and the mother prepared gravy consisting of lard and formula on more than one occasion as the only nourishment available in the home.
The homemaker testified that a lack of affection was observed in the mother, and she noted negative behaviors by Lela such as slapping and name-calling. The father was able to feed and bathe T.E. properly, but was frequently absent from the home or, when present, would remove himself from the child or ignore the necessary tasks. William displayed affection toward the child, but it was observed to be inconsistent.
*451 The living conditions can be summarized as deplorable. Used clothing, dirty towels, full ashtrays and cups with clabbered coffee littered the living area. Used toilet tissue and soiled sanitary napkins were seen in the bathroom, along with roaches in the tub when the child's bath was being prepared. The mother attempted to mix formula in dirty jugs which often contained clabbered milk. She reused dirty Q-tips and wiped the baby's mouth with dirty towels. Medication and butcher knives were lying around the house in reach of the child. These conditions persisted after repeated admonishments by DCFS service workers. Some testimony indicated that the home environment had in fact deteriorated over time.
Section 1(D) of the Adoption Act (Ill. Rev. Stat. 1983, ch. 40, par. 1501(D)) lists specific grounds for the court's determination of parental unfitness, only one of which need be demonstrated. Lela and William were adjudicated unfit for failure to make reasonable efforts to correct the conditions which were the basis for the child's removal or to make reasonable progress toward the return of the child, for failure to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare, and for repeated failure to provide the child with adequate food, clothing or shelter although physically and financially able to do so, as defined in the Adoption Act. Ill. Rev. Stat. 1983, ch. 40, par. 1501(D)(b), (m) and (o).
The termination of parental rights requires a finding of unfitness fully supported by clear and convincing evidence. (Paul v. Steele (1984), 101 Ill.2d 345, 461 N.E.2d 983; Davis v. Bughdadi (1983), 120 Ill. App.3d 236, 458 N.E.2d 177; In re Harrison (1983), 120 Ill. App.3d 108, 458 N.E.2d 146.) Wide discretion is afforded the trial court, however, whose findings will not be disturbed unless palpably against the manifest weight of the evidence. (In re M.B.C. (1984), 125 Ill. App.3d 512, 466 N.E.2d 273; In re Gates (1978), 57 Ill. App.3d 844, 373 N.E.2d 568.) It is obvious from the record that the trial judge evinced a deep awareness of the sensitive nature of the termination of parental rights, which is justifiable only for cogent reasons. We cannot say that the court's findings were unsupported by the record. On the contrary, the evidence adduced at the hearings amply sustains the finding of unfitness as defined in the Adoption Act and listed in the court order, only one of which was required for an adjudication of unfitness. Ill. Rev. Stat. 1983, ch. 40, par. 1501(D).
Uncontroverted testimony proved the mother's persistent inability to properly care for her child or to improve the deleterious home environment. The father argues that his capability was never in question and that his unfitness was not convincingly shown, because all the evidence *452 was directed at the mother. We cannot agree. Despite William's knowledge of the mother's serious shortcomings, which circumstantially placed a greater burden on him concerning T.E.'s welfare, he failed to make up for Lela's incapacity. His frequent absences, however justified, exacerbated the poor environment in the parental home. He simply failed to rectify the situation, including the dirty and unsafe living conditions, the lack of food, and the inappropriate clothing. Though William emphasizes his capability and concern, he fails to explain or account for his failure to correct or ameliorate the wretched home situation over a period in excess of two years. Additional evidence in the record reveals that William is the absentee father to several other children scattered throughout the country. This evidence is inferentially suggestive of a lack of consistency in parental concern and responsibility. William also stated that he had no interest in marrying Lela unless the child was returned. It is not unreasonable to view the father's interest in T.E. as inconstant.
Each case must be decided sui generis. (In re Gates (1978), 57 Ill. App.3d 844, 373 N.E.2d 568.) In this unique situation, the father cannot be disassociated from the mother in an assessment of the child's potential environment. There is little evidence which demonstrates that the parents, together or separately, made reasonable efforts or progress to provide T.E. with what she needed, to improve the conditions which led to her early DCFS placement, or to sustain sufficient interest or responsibility pertaining to their child as warranted under the circumstances.
For the foregoing reasons, the orders of the trial court are affirmed.
Affirmed.
JONES and KASSERMAN, JJ., concur.