*In re* ANNE BENNETT, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* SUSAN ANN BENNETT, Respondent-Appellant.)

Third District   No. 79-177

Opinion filed January 17, 1980.

Jean A. Becker, of Western Illinois Legal Assistance Foundation, of Rock Island, for appellant.

Edward Keefe, State's Attorney, of Rock Island (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The Illinois Department of Children and Family Services (hereinafter the Department) initiated this proceeding by filing a supplemental petition in the circuit court of Rock Island County requesting that respondent Susan Ann Bennett be found an unfit parent under the provisions of the Adoption Act (Ill. Rev. Stat. 1977, ch. 40, par. 1501 *et seq.*), and that her parental rights be terminated and the guardianship administrator of the Department be appointed guardian of the person of respondent's minor daughter, Anne Bennett, with power to consent to her adoption pursuant to the provisions of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 701—1 *et seq.*). After a hearing on the merits, the trial court found that respondent had failed to make reasonable efforts to correct the conditions which were the basis for the minor's removal or to make reasonable progress toward her return within

12 months after an adjudication of neglect, and granted the petition. The sole question presented for our review is whether the decision of the trial court is against the manifest weight of the evidence.

On April 19, 1977, a petition was filed alleging that Anne Bennett was neglected and dependent and further alleging that respondent was unfit to have custody of her minor daughter. After an adjudicatory hearing on June 7, 1977, the trial court granted the petition, reserving the issue of termination of parental rights. The supplemental petition herein was filed on July 17, 1978, to determine that question, the minor having remained in foster care since 1977.

The evidence presented at the hearing in support of the supplemental petition consisted of the testimony of four professionals concerning the individual and collective behaviors of respondent and her daughter. Marilyn Rotunda, a Bethany Home caseworker, testified that respondent had been inconsistent in her approach to Anne's behavioral problems and had made no progress in her relationship with her daughter. A homemaker with Community Nursing Services, Deborah Hanaman, stated that respondent had failed to implement her suggestions and had made no progress in the mother-daughter relationship. Barbara Staib, a clinical social worker with the Rock Island Mental Health Center, testified as to various behavioral problems of Anne and recommended residential treatment for the minor. A clinical psychologist, Roger Gennari, stated that respondent's attempts to learn child management were sporadic, her changes inconsistent, and that no consistent progress had been made in the mother-daughter relationship. Dr. Gennari additionally testified to various problems Anne was experiencing. While we do not offer this conclusory summation as a comprehensive recitation of the professional testimony in the case at bar, it reflects the unanimity of opinion that the respondent had failed to improve her relationship with her daughter.

With the exception of Ms. Staib, who did not testify as to the progress in the mother-daughter relationship, the professionals who testified had their initial contact with respondent after the adjudicatory hearing of June 7, 1977. In this time between the two hearings, during which the minor was in two foster homes, the respondent became employed, twice receiving work awards, and attended both group and individual counseling sessions with Dr. Gennari. She visited with her daughter on a regular basis under the supervision of a homemaker and had regular casework sessions with a social worker. While our summation of the testimony of these professionals indicates their generally negative feeling, this was in part based on respondent's missing approximately 20 of 40 scheduled individual counseling sessions. Her attendance at the group sessions was more regular, however, and some missed individual sessions

were due to the psychologist being out of town and respondent's being unable to schedule appointments which would not conflict with her work schedule. Respondent herself was an abused child, and Dr. Gennari stated her poor parenting and not being "nurtured" made it more difficult for her to change than it would be for the average person. Nonetheless, he felt she had changed in ways he thought were "good considering where she was a year ago" though he did not feel normal changes had been made regarding her relationship with her daughter. As previously indicated, the other two professionals who testified concerning this issue concurred in the latter opinion.

■■ The relevant statutory authority is section 1 of the Adoption Act (hereinafter the Act) which provides in pertinent part:

"D. 'Unfit person' means any person whom the court shall find unfit to have a child sought to be adopted, the grounds of such unfitness being any of the following:

* * *

(m) Failure to make reasonable efforts to correct the conditions which were the basis for the removal of the child from his parents or to make reasonable progress toward the return of the child to his parents within 12 months after an adjudication of neglected minor under Section 2—4 or dependent minor under Section 2—5 of the Juvenile Court Act." (Ill. Rev. Stat. 1977, ch. 40, par. 1501(D).)

Only if the trial court finds a nonconsenting parent unfit under the Act after a child is adjudicated a ward of the court under the Juvenile Court Act, may a guardian with power to consent to an adoption be appointed. (Ill. Rev. Stat. 1977, ch. 37, par. 705—9.) The standard in cases of parental unfitness is proof by clear and convincing evidence (see, *e.g., In re Gates* (1978), 57 Ill. App. 3d 844, 853, 373 N.E.2d 568, 574; *In re Barber* (1977), 55 Ill. App. 3d 587, 590, 371 N.E.2d 299, 302; *In re Ybarra* (1975), 29 Ill. App. 3d 725, 729, 331 N.E.2d 224, 227), and the trial court's decision should not be disturbed on appeal unless against the manifest weight of the evidence. See, *e.g., In re Gates* (1978), 57 Ill. App. 3d 844, 853, 373 N.E.2d 568, 574; *In re Ice* (1976), 35 Ill. App. 3d 783, 786, 342 N.E.2d 460, 463; *In re Jones* (1975), 34 Ill. App. 3d 603, 607-08, 340 N.E.2d 269, 273.

■■ The language of subsection 1(D)(m) of the Act indicates that the two standards therein are disjunctive, making either a failure to make reasonable efforts or reasonable progress a ground for an adjudication of unfitness. (*In re Austin* (1978), 61 Ill. App. 3d 344, 378 N.E.2d 538.) Therefore we shall examine the evidence supporting each of these grounds in turn.

■■ The word "effort" makes the first standard inherently subjective because it does not focus on objective results. (See *In re Austin* (1978), 61 Ill. App. 3d 344, 350, 378 N.E.2d 538, 542.) Considering respondent's

continuing and regular contact with her daughter, obtaining and successfully continuing with her employment, and engaging in both individual and group counseling, there is little question that she had made the reasonable effort contemplated in this first statutory standard.

■■ The determination of the second standard of subsection (m) is more difficult. Of this ground, it has been said:

> "Accordingly, the term 'reasonable progress' requires at a minimum measurable or demonstrable movement toward the goal of return of the child. Whether a small amount of progress is 'reasonable' must be determined with proper regard for the best interests of the child. Such an inquiry might well involve consideration of the limitations of the parents, but also would necessarily require consideration of the possibility that the child might be forced to indefinitely reside with a succession of impermanent foster parents. Reasonableness may also depend on the situation which led to removal of the children, since slight progress in correcting a situation which was relatively mild could be viewed as more satisfactory than the same degree of progress in correcting a situation that greatly endangered a child." *In re Austin* (1978), 61 Ill. App. 3d 344, 350, 378 N.E.2d 538, 542-43.

At the adjudicatory hearing, respondent acknowledged that she continued to raise her voice to her daughter but not with her previous frequency. She testified that she no longer used physical discipline in correcting her daughter, and the record is void of any reference to physical abuse during the relevant period. Respondent explained she would become upset with Anne at times, such as when the child would play and refuse to pay attention when respondent sat at the kitchen table and helped the child with her homework, and she would remove herself from the situation. Respondent reapproached this situation by ultimately going back to her daughter and discussing the matter after regaining her composure. A neighbor for whom respondent babysat, Patricia Reynolds, testified that respondent displayed more patience with her daughter, taking "more time than before" and remaining "a lot calmer than she was." She related an instance when Anne was coloring and getting the coloring on a coffee table. Respondent told Anne not to get the coloring on the table and explained the reason for her request. Mrs. Reynolds concluded: "She was a lot calmer than I would have been." The testimony of respondent and Mrs. Reynolds was the only evidence making a direct comparison of preremoval and present behaviors.

● 5, 6 In its memorandum opinion of September 20, 1978, the trial court found respondent's fitness to care for her daughter basically unchanged since the prior adjudicatory hearing based on the expert testimony presented. As previously noted, this testimony related to the period after

that hearing, and our search of the record reveals no consideration of respondent's fitness at the time of that initial adjudicatory hearing. In evaluating the statutory standard of "reasonable progress," it is essential that the trial court have considered the situation triggering the minor's initial removal as a benchmark for measuring progress. Of respondent's status at that time we know nothing as the record of the prior proceeding was not considered by the trial court. Of the need for such consideration, it has been said:

> "In this connection, the record of the prior proceedings for removal of the child are indispensible. In an unfitness hearing, testimony may well cover the current status of the parents and their activities since removal of the children, but the best evidence of the conditions which compelled removal of the children is that prior record. Because it is impossible to measure progress without referring to a prior status, current status and the process by which movement from the one status to the other occurred, absence of evidence regarding the prior status would render a determination of 'reasonable progress' meaningless. * * * this record is essential to gauging the progress these parents have made, not only at trial (see *In re Robertson* (1977), 45 Ill. App. 3d 148, 359 N.E.2d 491), but also for purposes of review." *In re Austin* (1978), 61 Ill. App. 3d 344, 350-51, 378 N.E.2d 538, 543.

As it will thus be necessary to remand this cause for consideration of petitioner's prior status as revealed in the record of the initial adjudicatory hearing, we note with approval the *Austin* guidelines for determining reasonable progress previously set forth and direct the trial court to expressly consider respondent's limitations as a parent due to the abuse in her background, as well as the other factors there set forth. Since the major issue relates to progress or change, the testimony of the witnesses ought to be considered in its relevance to this issue.

Accordingly, the order of the circuit court of Rock Island County terminating the parental rights of respondent is vacated and the cause remanded for further proceedings consistent with the views herein.

Remanded with directions.

ALLOY and BARRY, JJ., concur.