*In re* KRISTEEN LORRAINE BENTSEN, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* SHIRLEY BENTSEN, Respondent-Appellant.)

Third District    No. 80-99

Opinion filed November 13, 1980.

Dale Strough, of Fleming, Boyer & Strough, of Watseka, for appellant.

James R. Fritze, State's Attorney, and J. Dennis Marek and Susan Sumner Tungate, both of Tungate & Tungate, all of Watseka (Gordon L. Lustfeldt, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

The Illinois Department of Children and Family Services (hereinafter the Department) initiated this proceeding by filing a petition for supplemental relief in the circuit court of Iroquois County requesting that respondent Shirley Bentsen be found an unfit parent under the provisions of the Adoption Act (Ill. Rev. Stat. 1977, ch. 40, par. 1501 *et seq.*). The Department also requested her parental rights be terminated and the acting guardianship administrator of the Department be appointed guardian of the person of respondent's minor daughter, Kristeen Lorraine Bentsen, with power to consent to her adoption pursuant to the provisions of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 701—1 *et seq.*). After a hearing on the merits, the trial court found that respondent had failed to make reasonable efforts to correct the conditions which were the basis for the minor's removal from parental custody, or to make reasonable progress toward her return within 12 months after an adjudication of neglect. The court further found that respondent failed to maintain reasonable contact with the minor or to plan for her future for more than 12 months while the minor was in the care of the Department. The court granted the Department's petition.

On September 30, 1977, a petition for adjudication of wardship was filed alleging that the minor was neglected. After a subsequent shelter care hearing, she was placed in the custody and guardianship of the Department. On October 12, 1977, an adjudicatory hearing was conducted. Respondent appeared *pro se*, and the record reflects the petition was read and explained and respondent was admonished as to the possible dispositions of her child concomitant with a finding of neglect. Thus admonished, respondent stated she understood her rights and wished to waive her right to counsel. She thereupon admitted the

allegations of the petition and agreed to an immediate dispositional hearing. Respondent testified that she was not able to provide for her daughter due to inadequate financial resources, in consequence of which she was unable to provide a proper home. The court then granted the petition, and the minor has since resided in foster homes.

On March 9, 1979, the petition at bar was filed, and on April 18, 1979, the minor's father was defaulted. On July 26, 1979, a hearing was conducted as to respondent's rights. The People's first witness was Curtis Rookstool, respondent's son and the minor's half-brother. Rookstool testified that he had been living in the same community as his mother for several weeks and during that time she had no regular home or apartment but stayed in boarding houses, with friends, or in her pickup truck. To his knowledge, his mother had not had a regular place to live at any time during the previous two years and had a problem with alcohol.

The State then called Robert Reynolds, respondent's father, who testified that his daughter had made no effort to establish a permanent home and that he had on four occasions over the previous two years seen her sleep in her truck near his home. While he stated he believed his daughter had an alcohol problem, he added she never treated her daughter, whom he characterized as her favorite, badly. Respondent's mother, Lois Reynolds, then testified that her daughter had been intoxicated on all but one of the 10 or 11 occasions she had seen her since the adjudicatory hearing on October 12, 1977. She added that the very few times she saw her grandchildren, they were dirty, poorly dressed, and hungry.

Harry Rookstool, respondent's former husband, was the People's fourth witness and testified to respondent's lack of attention to two other children she left in his care for four months. Deputy Sheriff James Brammer, Jr., next testified as to one occasion he observed respondent and her daughter sleeping in the truck, which he had at times seen in the vicinity of taverns and various boarding houses, and to the fact respondent had been ticketed and convicted of driving under the influence of intoxicating liquor. Paul Williams, Jr., a welfare worker from the Newton County, Indiana, Welfare Department testified that in August 1978, respondent voluntarily placed two of her children with his department and, during the following nine months, never visited nor communicated with them.

James Scholer, a supervisor and social worker for the Department, testified that from October 1977 to February 1979 respondent made no effective progress toward the return of her child and it was not until September 1979 that he was aware of her whereabouts. From November 1977 to February 1979, respondent failed to visit the minor nor maintain

any contact beyond one or two telephone calls, although she contacted the Department once concerning a visit which was denied pending an interview. After February 1979, respondent did visit the minor regularly.

The minor testified that she and her mother lived in the truck for over a month. During that time, they subsisted on bologna sandwiches and juices as the truck had no refrigerator and respondent would leave her alone in the unheated truck while she would visit a tavern. The minor told of having to care for her younger siblings when she was five and stated she did not like her mother and had no desire to return to her.

After the People stipulated that Jennifer Ludwig, a caseworker for the Department, had visited respondent's home on October 3, 1979, and found it in most respects suitable for the minor, respondent took the stand. She testified that she had lived in nine different locations during the period between the two hearings but now had a home and had been steadily employed since February 1979. Respondent claimed the minor's foster parents discouraged communication with her daughter and that visits were hampered by her residencies in Texas and Indiana as well as by her lack of resources.

On appeal, respondent raises four principal assignments of error, the first two of which concern the subject statutory authority of section 1 of the Adoption Act (hereinafter the Act), which provides *inter alia*:

> " 'Unfit person' means any person whom the court shall find to be unfit to have a child sought to be adopted, the grounds of such unfitness being any one of the following:
>
> * * *
>
> (m) Failure to make reasonable efforts to correct the conditions which were the basis for the removal of the child from his parents or to make reasonable progress toward the return of the child to his parents within 12 months after an adjudication of neglected minor under Section 2—4 or dependent minor under Section 2—5 of the Juvenile court Act.
>
> (n) Failure, for a period of 12 months, to maintain reasonable contact with the child or to plan for the child's future, when the child is in the care of an authorized agency, whether or not the child is a ward of the court, provided the agency attempted to encourage and strengthen the parental relationship. Contact or communication by a parent with his or her child which does not demonstrate affection and concern does not constitute reasonable contact and planning under this subparagraph (n)." (Ill. Rev. Stat. 1977, ch. 40, par. 1501(D).)

Only if the trial court finds a nonconsenting parent unfit under the Act after a child is adjudicated a ward of the court may a guardian with

power to consent to an adoption be appointed. Ill. Rev. Stat. 1977, ch. 37, par. 705-9.

Respondent's initial contentions of error are that the trial court's findings of unfitness under each of the aforementioned provisions are against the manifest weight of the evidence. Our review of the record reveals that it was undisputed that respondent visited with her daughter on November 12, 1977, and thereafter did not again visit until February 21, 1979. During this period, respondent only once even attempted to contact the Department concerning a visit with her daughter. Respondent's only contact with her daughter consisted of one or two telephone calls and an apparently unauthorized attempt to visit her daughter at school, at which time the minor refused to go with her and ran to her foster home. From November 12, 1977, to March 16, 1978, respondent failed to inform the Department of her whereabouts and when, on the latter date she did offer this information, the Department found it to be false. Not until September 1979, was the Department provided with a correct address, and at no time did respondent request any assistance whatsoever. While she failed to remember any offer of assistance, Scholer indicated he and a public aid worker offered to make efforts to find respondent housing and employment and Scholer offered a home-maker and other assistance from the Department.

■■ The standard in cases of parental unfitness is proof by clear and convincing evidence (*In re Bennett* (1980), 80 Ill. App. 3d 207, 399 N.E.2d 735; *In re Gates* (1978), 57 Ill. App. 3d 844, 373 N.E.2d 568; *In re Barber* (1977), 55 Ill. App. 3d 587, 371 N.E.2d 299), and the trial court's decision should not be disturbed on appeal unless against the manifest weight of the evidence (*In re Bennett; In re Gates; In re Ice* (1976), 35 Ill. App. 3d 783, 342 N.E.2d 460). We find the court's conclusion that there was a lack of reasonable progress toward the return of the minor within 12 months after the adjudication of neglect was not against the manifest weight of the evidence. We therefore shall not disturb the trial court's decision and do not reach the various other arguments advanced by respondent concerning the sufficiency of the evidence and the other statutory provisions at bar as they are not essential to the determination of this case. *Illinois Racing Board v. Hammond* (1977), 56 Ill. App. 3d 609, 371 N.E.2d 1189; *International Society for Krishna Consciousness, Inc. v. City of Evanston* (1977), 53 Ill. App. 3d 443, 368 N.E.2d 644; *Spunar v. Clark Oil & Refining Corp.* (1977), 53 Ill. App. 3d 477, 368 N.E.2d 990.

Respondent's next contentions of error are that the 12-month periods in the aforementioned provisions should not impose a mandatory limitation on the time period which a parent of a neglected child is granted to succeed in achieving the mandates enumerated therein; and, if such

mandatory limitation periods are imposed, their imposition violates respondent's constitutional rights of equal protection and due process. Confining our discussion to the issue of reasonable progress, we note the evidence adduced at trial was not limited to the subsequent 12-month period. While that period terminated on October 21, 1978, almost every witness, including respondent herself, testified to events thereafter and the parties stipulation as to housing concerned an event occurring almost one year later. The trial court reflected its consideration of this extended period by stating that matters worsened until "well after the twelve month period." As it is therefore clear that this cause does not involve a situation where consideration of respondent's progress was limited to the 12-month statutory period, we decline to reach the constitutional issues advanced by respondent as we are precluded from considering abstract propositions. *E.g., City of Chicago v. Airline Canteen Service, Inc.* (1978), 64 Ill. App. 3d 417, 380 N.E.2d 1106; *Shannon v. Stookey* (1978), 59 Ill. App. 3d 573, 375 N.E.2d 881; *Pipitone v. Mandala* (1962), 33 Ill. App. 2d 461, 180 N.E.2d 33.

■■ Respondent's next contention of error is that various items of evidence were improperly admitted as they concerned her relationships with her other children and were therefore irrelevant and immaterial. The specific items of testimony to which respondent objects concerned her dealings with the Indiana Welfare Department and her former husband. We note that it is not unusual for a trial court to consider evidence regarding the parental relationships as applied to other children. (See, *e.g., In re Walton* (1979), 79 Ill. App. 3d 485, 488-89, 398 N.E.2d 409, 411-12; *In re Brooks* (1978), 63 Ill. App. 3d 328, 338-39, 379 N.E.2d 872, 880-81; *In re Robertson* (1977), 45 Ill. App. 3d 148, 151-52, 359 N.E.2d 491, 493-94; *In re Flynn* (1974), 22 Ill. App. 3d 994, 996-97, 318 N.E.2d 105, 108) and feel that such evidence was here probative of respondent's progress. We therefore find no error in the admission of this evidence.

■■ Respondent last contends that the trial court erred in denying her motion for use of interrogatories. We note that the court ordered the People to supply a list of all witnesses, written statements, and oral statements reduced to writing. In addition respondent had the opportunity to question the witnesses during a conference. Civil discovery provisions do not routinely apply to juvenile delinquency proceedings; rather, their applicability should be left to the discretion of the court. (*People ex rel. Hanrahan v. Felt* (1971), 48 Ill. 2d 171, 269 N.E.2d 1.) While this cause does not involve a delinquency proceeding, we note the discretionary standard has been also found applicable in civil actions not involving delinquency or minors (*City of Danville v. Hartshorn* (1973), 53 Ill. 2d 399, 292 N.E.2d 382 (municipal ordinance violation); *People v.*

*Finley* (1974), 21 Ill. App. 3d 335, 315 N.E.2d 229 (implied consent hearing)), as well as in a dependency hearing. (*People v. Davis* (1973), 11 Ill. App. 3d 775, 298 N.E.2d 350.) We therefore find it was within the discretion of the trial court to deny respondent's motion and that its decision, under the circumstances herein, was not an abuse of that discretion.

Accordingly, the judgment of the circuit court of Iroquois County is affirmed.

Affirmed.

ALLOY, P. J., and STENGEL, J., concur.