*In re* TIFFANY A. DOOLAN, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* JUNE DOOLAN, Defendant-Appellant.)

Third District    No. 80-419

Opinion filed October 30, 1981.

SCOTT, P. J., dissenting.

Clifton J. Mitchell, of Prairie State Legal Services, of Peoria, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

June Doolan appeals from an order of the circuit court of Peoria County terminating her parental rights to her daughter Tiffany Doolan. The court found that, following the 1977 removal of the child from the

mother's custody, June Doolan failed to remedy the causes of the removal and she failed to make reasonable progress toward the return of the child within 12 months of the removal. The court concluded that the mother was unfit and ordered all her parental rights and responsibilities terminated.

According to the record, June Doolan was 29 years old at the time of this hearing in the proceeding to terminate her parental rights (June of 1980), and her daughter Tiffany was six years old. The mother has never been married and has completed less than 10 years of schooling. (She had previously surrendered an older child for adoption.) In December of 1976 Tiffany was adjudicated to be neglected and was made a ward of the court in La Salle County with physical custody remaining with the mother. In May of 1977, when Tiffany was 2 years old, she was struck by a car while playing near a highway in Utica, Illinois. According to the Department of Children and Family Services caseworker and the homemaker who were working with the mother at that time, the mother often allowed the little girl to play outside near the highway without supervision. As a result of the accident, Tiffany was hospitalized in St. Francis Hospital in Peoria, and the mother then moved to Peoria.

Tiffany and her mother resided with relatives in Peoria, and a caseworker worked with the mother to help her look for employment and housing. In October of 1977 Tiffany was again hospitalized for a few days with a rash. The mother was notified to come to take her home on October 12, 1977. When the mother failed to appear, a juvenile neglect petition was filed in Peoria, and temporary custody was given to DCFS. Later permanent custody was given to the Department, and the La Salle County proceedings were transferred to Peoria as well. DCFS caseworkers continued to try to help the mother, and monthly visitation with Tiffany was arranged at the DCFS office. Finally in December of 1978, the Department filed a petition seeking to terminate the mother's parental rights. Pursuant to Department policy, the caseworker suspended all visitation after the petition was filed. About six months later, monthly visitation was resumed at the request of the mother's attorney.

The primary issue upon appeal is whether the mother made reasonable progress toward the return of her child within 12 months after the removal. Section 1 of the Adoption Act sets forth the grounds for a finding of unfitness, including, "(m) *Failure to make reasonable efforts to correct the conditions which were the basis for the removal of the child from his parents or to make reasonable progress toward the return of the child to his parents within 12 months after an adjudication of neglected minor under Section 2—4 or dependent minor under Section 2—5 of the Juvenile Court Act.*" Ill. Rev. Stat. 1979, ch. 40, par. 1501(d).

As this court stated in a recent case, "The standard in cases of

parental unfitness is proof by clear and convincing evidence [citation] and the trial court's decision should not be disturbed on appeal unless against the manifest weight of the evidence [citation]." (*In re Bentsen* (1980), 90 Ill. App. 3d 269, 412 N.E.2d 1167.) It has been held that the statute requires proof of either a failure to make a reasonable effort or a failure to make reasonable progress in order to support a finding of unfitness. (*In re Austin* (1978), 61 Ill. App. 3d 344, 378 N.E.2d 538.) The question of what is a reasonable effort involves a subjective judgment based upon the amount of effort which is reasonable for a particular person, while the question of what is reasonable progress is more objective, depending upon the amount of progress measured from the conditions existing at the time custody was taken from the parent. (*In re Bennett* (1980), 80 Ill. App. 3d 207, 399 N.E.2d 735.) We think this distinction is important in the case before us.

The mother argues that she has made good progress toward the return of her child and that she has met all the goals which were set for her by her caseworker. According to the record, when Tiffany was first adjudicated to be neglected, the mother was living with the little girl's putative father; he was handling the mother's ADC funds in such a way that there was often insufficient money for food; the mother did not interact well with her daughter and did not give her adequate care; and the mother was slovenly in her dress and failed to provide sufficient meals for the child. At the time custody was given to the Department, the mother was living with relatives and was not handling the day-to-day requirements of caring for her small daughter with any better success than previously. Her caseworker testified that the mother was given three goals: (1) to work with the Department of Mental Health; (2) to find employment; and (3) to find an apartment. According to the record, when the petition to terminate the rights was filed, the mother did not have her own apartment and she had not found regular employment, although she had worked with the Department of Mental Health.

Without going into a lengthy recitation of details, we must note that the Department has provided extensive help to the mother in an effort to correct the deficiencies in her parenting abilities. Before she moved to Peoria, she was provided with a homemaker who spent five hours daily with the mother. After the mother moved to Peoria, a second homemaker helped her look for a job. The mother obtained three different jobs, each for a short time, but she was fired from each for various reasons. The first Department caseworker testified that the mother made very little progress from August 1977 to December 1978. Since the mother lost custody in October of 1977, it is clear that almost no progress was made by the mother during the first 12 months after losing custody. She failed to keep

nearly half her appointments with Department personnel; she refused to cooperate with the homemaker service; she did not have her own apartment; and she did not find steady employment. A new caseworker took over in December of 1978, and beginning in January of 1979, the mother attended the Community Workshop where she apparently learned some general employment skills and acquired basic work habits. Her vocational counsellor at the Workshop described the mother as "a blob" who was slow and often late when she first began attending the workshop, but after seven months she showed improvement and was assigned more responsible work. She lived at the YWCA for a time, and then in March of 1979 moved to a "half-way house" where she shared housekeeping responsibilities with other residents. In July of 1979 the mother obtained employment cleaning motel rooms, and in December of 1979 she found an apartment, on her own. Thus, the evidence in the record demonstrates that the mother made a great deal of progress, much of it coming after January of 1979.

The current caseworker testified to the mother's progress, but stated that she did not believe Tiffany should be returned to her mother because the mother has thus far been unable to make plans for caring for the child. The mother lacks transportation, and, in the opinion of the caseworker, cannot be counted on to make arrangements for getting the little girl to school and to day care.

The standard for the court to apply is "reasonable progress," which was defined in *In re Austin* as follows:

> "[A]ccordingly, the term 'reasonable progress' requires at a minimum measurable or demonstrable movement toward the goal of return of the child. Whether a small amount of progress is 'reasonable' must be determined with proper regard for the best interests of the child. Such an inquiry might well involve consideration of the limitations of the parents, but also would necessarily require consideration of the possibility that the child might be forced to indefinitely reside with a succession of impermanent foster parents. Reasonableness may also depend on the situation which led to removal of the children, since slight progress in correcting a situation which was relatively mild could be viewed as more satisfactory than the same degree of progress in correcting a situation that greatly endangered a child." (61 Ill. App. 3d 344, 350, 378 N.E.2d 538, 542-3; *In re Bennett*, 80 Ill. App. 3d 207, 211, 399 N.E.2d 735, 738.)

On the basis of the record, we believe the mother has made some objective, demonstrable movement toward accomplishing the goal of return of the child. Whether that progress is less than "reasonable" so as to

justify terminating her parental rights is a much more difficult question. The mother by her own admission is a "slow learner." The Department and other State agencies have worked with her for several years in an effort to teach her to care for herself and her daughter. We think it obvious that the mother did not make reasonable progress at first, but beginning in January 1979, her progress was so great that it would have to be characterized as "reasonable." The court heard extensive evidence from both the State and the mother concerning the mother's progress after the initial 12-month period had expired. We thus·believe the parties have conceded that the fitness of the mother should be measured by her progress from October 1977 until the date of the hearing, June of 1980. (*Cf. In re Hillyer* (1980), 82 Ill. App. 3d 505, 403 N.E.2d 36.) On the basis of all the evidence, we believe the trial court erred in finding the mother unfit.

The fact that the mother's parental rights should not be terminated does not mean that custody should be restored to her immediately. The record indicates that the Department has never allowed the mother to visit her daughter for more than one hour per month and that those visits have been at the Department office in the presence of the caseworker. The mother's relationship to her daughter is admittedly not close, and her ability to care for her daughter is unproven. At this time, after four years of separation, it may be difficult for a close relationship to be reestablished. However, we believe the mother is entitled to a better chance to prove her ability to care for her daughter than she has been given under the one-hour-per-month policy.

We recognize that cases of this kind are difficult, and that the caseworkers must exercise their best judgment in trying to serve the best interest of the child. During the time when the mother was unemployed, was undependable in keeping appointments, and lacked independent housing, it was no doubt prudent to restrict the visits in order to provide her with a motivation to correct these deficiencies. But in more recent months when the mother has made notable progress in caring for herself and in her ability to interact with her daughter during visits, the Department could have permitted longer visits under more varied circumstances. We believe the best interest of the child requires that this cause be remanded for further proceedings in the circuit court of Peoria County to determine the questions of visitation and of temporary and permanent custody.

Reversed and remanded.

STOUDER, J., concurs.

Mr. PRESIDING JUSTICE SCOTT, dissenting:

I disagree with the result set forth in the majority opinion. My colleagues recognize that our legislature has determined that reasonable progress toward the return of a child to its parents must be made within 12 months of the removal of the child. The intent of this requirement is clearly apparent. The legislature desired to avoid a prolonged period during which a child is held in a state of flux while a parent or parents attempt to correct their life-style. In the case being considered the minor child, Tiffany, was held in a state of flux for a period in excess of 30 months prior to the trial court's determination that the parental rights of the respondent mother be terminated. The result reached by the majority would reinstate the "period of flux" by reversing the trial court, yet directing that the child's custody remain in the Department while the respondent is given additional time to correct her life-style.

In my opinion the record fails to shed any ray of hope that the respondent mother will rehabilitate or correct her life-style in the additional time granted to her by the result reached in the majority opinion.

Prior to the Department obtaining custody of Tiffany, the child's health and safety was endangered by the inability of the respondent to understand her parental duties. However, directing our attention to the period commencing on November 8, 1977, and ending in June 1980, the record discloses a bare minimal improvement as far as the respondent's life-style was concerned. During that period of time the respondent failed to obtain steady employment, though directed to do so. The record discloses that during the period in question the respondent was employed at a Pancake House, a nursing home, a Steak and Shake restaurant, at Lum's (a fast food business), the Community Workshop, and at the Days Inn. With the exception of the latter place, the respondent was unable to stay employed. She was either discharged or after working a few days would quit. She was employed at the Days Inn motel at the time her parental rights were terminated. She commenced working at the Days Inn in July of 1979 and while as stated she was still employed at that business in June 1980, her work was not entirely satisfactory due primarily to tardiness.

The Department also insisted that the respondent find suitable housing. The record discloses that even with the help of the Department she had difficulty in complying with this request. During the period of time in question she lived with two different families, at the Y.W.C.A., and the Monroe House, which is a half-way house operated by the Human Services Center. The Department had difficulty locating the respondent because of her failure to inform the Department of her address.

During a 14-month period the respondent had but eight visits with

her child, Tiffany, and only four to six of these visits were requested by the respondent.

The severance of parental bonds is a drastic measure; however, I believe that the same is mandated in the instant case. The minor child is entitled to a stable, enduring home provided by responsible parents. (See *In re Austin* (1978), 61 Ill. App. 3d 344, 378 N.E.2d 538.) The record in the instant case belies the respondent's assertion that she can provide such a home and further illustrates the fact that the respondent is unable to assume and exercise those duties and responsibilities incumbent upon a parent. I believe that the trial court's determination that the respondent's parental rights should be terminated was supported by the evidence and should be affirmed.