*In re* BOBBY ALLEN, JR., *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Valerie Allen, Respondent-Appellant).

Second District   No. 2—87—0934

Opinion filed August 4, 1988.

Emery L. Duffy, of Crystal Lake, for appellant.

Thomas F. Baker, State's Attorney, of Woodstock, and Eleesha Pastor O'Neill, of Chicago (William L. Browers, of State's Attorney's Appellate Prosecutor's Office, of counsel), for the People.

Gary T. Morgan, of Department of Children & Family Services, of Rockford, guardian *ad litem*.

JUSTICE INGLIS delivered the opinion of the court:

Respondent, Valerie Allen, mother of Bobby Allen, Jr., and Rudy Allen, appeals from orders of the circuit court of McHenry County terminating her parental rights and authorizing the guardianship administrator of the Illinois Department of Children and Family Services (DCFS) to consent to the minors' adoption. Respondent contends that the trial court's decision was not supported by clear and convincing evidence. Although the orders appealed from apply to the minors' natural father also, we note that he is not a party to this appeal. We affirm.

On March 10, 1987, the State filed its petitions to terminate the parental rights of respondent and appoint DCFS as legal guardian of the minors with the power to consent to their adoption. Bobby and Rudy had previously been adjudicated to be neglected minors and wards of the court. Bobby had first been adjudicated a neglected minor in November 1981. In November 1983, the State again sought to have both Bobby and Rudy adjudicated neglected minors. At that time respondent stipulated that (1) on or about October 21, 1983, the minors were observed to be uncared for and dirty; (2) on or about October 21, 1983, the only food present in the motel room where the minors were residing with respondent and their natural father consisted of three-quarters of a loaf of bread, a small quantity of peanut butter, and two to three ounces of Kool-Aid; (3) as of November 1, 1983, township funding for the minors' family to pay for the motel room was terminated and the minors' parents were unable to provide or plan for the minors' support; and (4) as of November 2, 1983, the minors' parents were unable to provide adequate food and shelter for the minors in that they were evicted from the motel in which they were residing. On December 21, 1983, the court entered orders finding Bobby and Rudy to be neglected minors and wards of the court. Bobby and Rudy were placed in foster care and have remained in that capacity throughout these proceedings.

In its subsequent petitions to terminate respondent's parental rights, the State alleged that respondent was unfit in that she had failed to (1) maintain a reasonable degree of interest, concern, or re-

sponsibility for the minors' welfare; (2) make reasonable efforts to correct the conditions which were the basis for removing the minors and make reasonable progress toward the return of the minors within 12 months of their being adjudicated neglected; and (3) maintain reasonable contact with the minors within 12 months of their being adjudicated neglected. The court held a hearing on the State's petitions in July 1987. At that hearing, the State introduced the testimony of two social workers from Central Baptist Family Services (CBFS) who were familiar with the Allen case and who worked with respondent in an attempt to obtain the return of her children. According to these witnesses, CBFS social workers prepared seven client service plans for respondent from the time the minors were removed to the time of the hearing. These plans consisted of tasks respondent was required to complete to demonstrate her ability to parent her children properly. The tasks were determined by the circumstances surrounding the removal of the children, and respondent's progress was evaluated every six months. The tasks of all of these plans were substantially the same and provided that respondent obtain and maintain employment, obtain and maintain housing suitable for the minors, attend counseling, attend scheduled visitations with the minors, and cooperate with the social workers. The first of respondent's service plans was prepared on December 5, 1983. At the end of the first six-month period, respondent had not obtained employment or housing suitable for the minors and had not begun counseling. However, respondent did attend scheduled visitations with her children. At the end of the second six-month period, respondent had obtained employment and had continued with her scheduled visitations; however, she had not obtained housing suitable for the minors and had not begun counseling.

Respondent maintained her employment and continued with visitations throughout the duration of her involvement with CBFS. With respect to her attempts to find housing suitable for the minors, the record indicates that respondent moved eight times. One social worker testified that none of her choices were suitable for the minors, and another testified that one of her choices would have been suitable had she remained. Respondent told Jean Sowa, one of her social workers, that she was financially unable to find adequate housing. Sowa arranged for respondent to have budget counseling; however, respondent terminated her relationship with the budget counselor after a short period. Sowa acknowledged that respondent was on the waiting list for public housing in McHenry County. Sowa further acknowledged that she accompanied respondent to attempt to secure housing at seven locations, and that respondent was unable to secure

housing because she was ineligible, could not afford it, or had bad credit. Respondent began counseling in October 1985 and attended five sessions. Respondent terminated those sessions in June 1986, because she did not believe they were helping her and she was uncomfortable using a male counselor. Although respondent was provided with the name of a female counselor, she did not contact that person and resume counseling sessions until September 1986. At that time, respondent was under court order to resume counseling. Respondent subsequently attended 11 sessions with her new counselor; however, Sowa testified that the counselor's report indicates that respondent has not taken responsibility for her situation and has not made full use of the counseling sessions.

At the conclusion of the State's case, the trial court entered a directed finding in favor of respondent as to that portion of the petitions alleging that respondent was unfit for failure to maintain contact with the minors. Respondent then testified on her own behalf. Respondent testified that she lives in a motel room and has been at that location for eight months preceding the hearing. She has been employed with the same company for two years and is working the night shift at an hourly wage of $6.27. Respondent has a net weekly income of approximately $180, and acknowledged having approximately $135 in bills per week. She pays $99.75 per week for her motel room. Respondent testified that she is trying to satisfy her debts and is unable to save. Respondent stated that she has $5 in a bank account. Respondent further stated that she is using her money to pay back debts owing to her mother and friends. Respondent acknowledged that she has been unsuccessful in locating affordable housing suitable for the minors. Respondent stated that the least expensive housing she could find rented for $425 per month plus utilities. Respondent acknowledged that she confined her search to Woodstock, Illinois, because she relies on public transportation and does not have a driver's license or a car; however, respondent represented at oral argument that her search extended to other communities as well. Respondent's most recent attempt to secure housing involved searching for an apartment to share with her brother. Respondent stated that these efforts were unsuccessful due to a reluctance on the part of landlords to rent to an unmarried couple. Respondent also testified that she has maintained her visitations with the minors, has attempted to give them gifts, and carries insurance on them through her employer. Respondent stated that she has obtained a divorce from the minors' natural father and intends to file for bankruptcy in order to reform her financial situation. Respondent represented at oral ar-

gument that she has in fact filed for and been discharged from bankruptcy.

At the conclusion of the hearing, the court ruled that the State failed to sustain its burden on that portion of the petitions alleging that respondent was unfit because she failed to maintain a reasonable degree of interest, concern and responsibility for the minors' welfare. However, the court found that the State sustained its burden as to that portion of the State's petitions concerning respondent's failure to make reasonable efforts to correct the conditions which were the basis for removal and make reasonable progress toward return of the children. The court noted that respondent failed to use the means available to her to rehabilitate her situation and any efforts on her part were the result of threatened legal action or court order. The court therefore ruled that respondent was an unfit parent pursuant to section 1(D)(m) of the Illinois Adoption Act (Adoption Act) (Ill. Rev. Stat. 1987, ch. 40, par. 1501(D)(m)), stating:

"It is my opinion, based upon clear and convincing evidence, that Valerie Allen has demonstrated no movement toward the goal of reunification or made reasonable efforts to correct the reasons which were the basis for removal of the children over three years ago."

The court continued the cause to September 2, 1987, to determine a disposition with regard to placement which was in the best interests of the minors.

At the September 2, 1987, hearing, the court heard testimony from James Craig, the minors' foster father. Craig testified that Bobby and Rudy live with him and his wife, their natural daughter, and two other foster children. Craig stated that he and his wife have a close relationship with Bobby and Rudy and would adopt them if they could be adopted. Bobby, who was at that time seven years old, and Rudy, who was five years old, both testified that they wanted to continue living with the Craigs. At the conclusion of the hearing, the court again stated that respondent failed to satisfy her statutory obligation of correcting the conditions which were the basis for removing the children within 12 months of their removal. The court noted that as a result, Bobby and Rudy have been in legal "limbo" since 1981 and 1983, respectively, a period of time the court found to be too long. The court concluded that respondent's parental rights should be terminated and appointed a guardian to consent to the minors' adoption. Orders were entered with respect to each of the minors, and respondent filed her timely appeals.

Respondent first contends that the trial court erred in finding her

to be an unfit parent. We disagree.

■■ It is well established that a finding of parental unfitness must be supported by clear and convincing evidence. (*In re Paul* (1984), 101 Ill. 2d 345, 352; *In re R.G.* (1988), 165 Ill. App. 3d 112, 133-34.) The findings of the trial court must be given great deference since it has the opportunity to view and evaluate the testimony of the witnesses, and the trial court's decision should not be reversed on appeal unless it is contrary to the manifest weight of the evidence. *In re R.G.*, 165 Ill. App. 3d at 134; *In re R.M.B.* (1986), 146 Ill. App. 3d 523, 527-28.

■■ ■ In the instant action, the court found respondent to be unfit pursuant to section 1(D)(m) of the Adoption Act (Ill. Rev. Stat. 1987, ch. 40, par. 1501(D)(m)). That section provides that a parent may be found to be unfit for failure "to make reasonable efforts to correct the conditions which were the basis for the removal of the child from such parent, or to make reasonable progress toward the return of the child to such parent within 12 months after an adjudication of neglected minor." (Ill. Rev. Stat. 1987, ch. 40, par. 1501(D)(m).) As the trial court correctly noted, failure to make reasonable efforts to correct conditions and failure to make reasonable progress toward return of the child are independent bases for a finding of unfitness. (See *In re Austin* (1978), 61 Ill. App. 3d 344, 349.) The court concluded that respondent was unfit under either standard. Based on the record before us, we cannot say that the court's decision was against the manifest weight of the evidence under either basis.

■■ Whether a parent's *efforts* to correct the conditions which were the basis for removing her children are reasonable involves a subjective judgment based upon the amount of effort which is reasonable for a particular person. (*In re Doolan* (1981), 101 Ill. App. 3d 322, 324; *In re Austin*, 61 Ill. App. 3d at 350.) In contrast, whether a parent's *progress* toward return of the children within 12 months of being adjudicated neglected is reasonable involves an objective judgment based upon the amount of progress measured from the conditions existing at the time custody was taken from the parent. (*In re Doolan*, 101 Ill. App. 3d at 324; *In re Austin*, 61 Ill. App. 3d at 350.) At a minimum, reasonable progress requires measurable or demonstrable movement toward the goal of reunification. *In re Austin*, 61 Ill. App. 3d at 350.

■■ In the instant action, the minors were removed from respondent's custody because they were dirty and because respondent was unable to provide them with adequate food and suitable housing. The State did not file its petitions to terminate respondent's parental rights until 39 months after the minors were removed, and the hear-

ing on those petitions did not take place until four months later. In the interim, respondent worked with three social workers under seven separate client service plans. Respondent obtained employment and maintained visitations with the minors; however, despite respondent's employment and the inordinate amount of time respondent was given to rehabilitate her situation, the record indicates that both her efforts and her progress in that regard were sadly deficient. The testimony indicates that respondent attended only one of the service plan evaluations. Respondent terminated her counseling after only five sessions because she did not believe it was helping her, and she did not resume counseling until the court ordered her to do so. Although testimony was introduced regarding her efforts to secure housing suitable for the children, we note that respondent limited the scope of her search and was accompanied on at least seven occasions by a social worker. Respondent complains that she is unable to afford suitable housing; however, we note that she terminated budget counseling arranged by her social worker. Respondent further asserted that she has been unable to save money because she has been attempting to satisfy her debts with creditors, but when questioned by the court regarding the disposition of funds available after payments to creditors, respondent merely offered that she was using it to pay back loans to family and friends. From this evidence, the trial court concluded that respondent's efforts were not reasonable, but rather were the result of actions by her social workers and legal action that threatened her continued separation from the minors. On this record, we cannot say that the court's determination was against the manifest weight of the evidence.

The trial court further found that respondent had not demonstrated any movement toward reunification. Each of the service plans prepared for respondent required her to obtain and maintain housing suitable for the minors. Respondent moved eight times during the existence of those service plans. With one possible exception, none of respondent's residences were sufficient for the minors. Although one social worker testified that one of the locations was suitable, respondent did not stay at that location. Respondent is currently living in a motel room which is not suitable for the minors. Respondent states that suitable housing is not affordable; however, respondent has failed to save any money and has rejected the assistance of a budget counselor procured for her by a social worker. The evidence indicates that respondent has made no measurable progress in obtaining housing suitable for the minors. The lack of suitable housing was a primary factor in the removal of the minors. On this record, we cannot say that the

trial court's finding that respondent has failed to show any measurable or demonstrable movement toward the return of her children was against the manifest weight of the evidence.

■■ ■ Respondent nonetheless argues that she has made some progress. In support of this assertion, respondent points to her inclusion on a waiting list for public housing in McHenry County, her divorce from the minors' natural father, her intention to file bankruptcy, and her attendance at counseling. This argument is unavailing. As noted above, respondent's attendance at counseling was court ordered, and, according to one social worker, her counselor has indicated that she is not making the best use of those sessions. In addition, the removal of the minors' natural father from the situation does not in and of itself establish respondent's ability to care for the minors and does not automatically require return of the children to her. Respondent's references to the possibility of future housing and available finances are similarly misplaced. Anticipated future events are an insufficient basis on which to measure progress. (See *In re Doolan*, 101 Ill. App. 3d at 326 (fitness should be measured by progress from date of removal to date of hearing).) We also note that in determining whether some progress is reasonable, the court may consider the parent's progress in light of the best interests of the minor so as to protect the minor from the possibility of a succession of impermanent residences. (*In re Austin*, 61 Ill. App. 3d at 350.) This would appear to be an exception to the general rule that the determination of a parent's fitness must be made *before* considering the best interests of the minor. (See *In re A.C.B.* (1987), 153 Ill. App. 3d 704, 708; *Perkins v. Breitbarth* (1981), 99 Ill. App. 3d 135, 138.) While the record supports the trial court's decision without consideration of this factor, we note that adding it only further supports the decision. These minors were in foster care for 39 months prior to the petitions being filed and 43 months prior to the hearing on those petitions. Yet, respondent had not in all that time obtained housing for them, and the record indicates that her prospects for obtaining suitable housing in the future, even if properly considered, are dim. While respondent may have made some slight progress during this time, the weight of the evidence is not contrary to a finding that she failed to make reasonable progress toward the return of her children in the 3½ years since they were placed in foster care. (See *In re Edmonds* (1980), 85 Ill. App. 3d 229, 233.) Accordingly, we find that the trial court did not err in finding respondent unfit.

Respondent next contends that the trial court erred in terminating her parental rights and appointing a guardian with the power to

consent to the minors' adoption. We disagree.

A court may terminate an individual's parental rights and appoint a guardian with the power to consent to adoption if the court finds, based on clear and convincing evidence, that the parent is unfit. (See *In re Enis* (1988), 121 Ill. 2d 124, 131; *In re R.M.B.*, 146 Ill. App. 3d at 527.) Once evidence of parental unfitness has been found, all of the parent's rights must yield to the best interests of the child. (*In re T.G.* (1986), 147 Ill. App. 3d 484, 488; *In re Dalton* (1981), 98 Ill. App. 3d 902, 913.) The decision to terminate parental rights and to appoint a guardian rests within the sound discretion of the trial court, and the reviewing court should not interfere with its judgment absent an abuse of discretion. *In re Dalton*, 98 Ill. App. 3d at 913.

As noted above, our review of the record in the instant action concludes that the evidence was sufficient for the court to find respondent to be unfit. Thus, turning to the best interests of the minors, we note that a major purpose for requiring a natural parent to make reasonable progress toward the return of her child within 12 months of being adjudicated neglected is so the child will not be left for an unnecessarily long time without a permanent parental relationship. (*In re A.C.B.*, 153 Ill. App. 3d at 708; *In re Austin*, 61 Ill. App. 3d at 351.) Here, 43 months had passed between the adjudication and the hearing on the State's petitions to terminate. The evidence presented by respondent of her current living conditions and future intentions is not promising. In the meantime, the minors have become acclimated to their foster family and have expressed a desire to stay with them. The foster father indicated that he would adopt the minors if available. Given this evidence and the evidence discussed above regarding respondent's inability to care for her children and failure to make reasonable progress toward reunification, we can only conclude that there would be no benefit for the minors in maintaining the status quo or returning them to respondent. See *In re Dalton*, 98 Ill. App. 3d at 913-14.

Respondent nonetheless makes an eloquent and persuasive argument that her parental rights should not be terminated merely because she cannot afford adequate housing. Respondent states that this case is simply a "matter of money." Were this case simply a "matter of money," we would be constrained to agree that termination of parental rights on that basis would be unduly harsh. After all, throughout history and in contemporary times many families have persevered under financial hardship. However, as is apparent from this opinion, this case is not simply a matter of money, but also of time. These minors have been in a state of legal limbo since 1981 and 1983, respec-

tively. Despite eight changes of residence, steady employment, and substantial assistance from social workers, respondent has been unable in all this time to marshal her resources and obtain suitable housing for these children. While we are sympathetic to her plight, we cannot jeopardize these two young futures by requiring the State to continue to wait for an event that, based on this record, may never come. The record before us more than adequately justifies the trial court's decision.

Accordingly, the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

DUNN and REINHARD, JJ., concur.