*In re* A.H., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Tamica Owens, Respondent-Appellant).

Third District   No. 3—91—0257

Opinion filed January 10, 1992.

Philip M. Pollock, of Peoria, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Jay P. Hoffmann, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HAASE delivered the opinion of the court:

The trial court found that following a prior adjudication of neglect, respondent Tamica Owens had failed to remedy the problems that had led to the removal of her son, A.H., and had failed to make reasonable progress towards the return of the child within 12 months of the removal. The court thereafter terminated her parental rights to A.H. Owens appeals.

According to the record, Tamica Owens was 22 years old at the time of the hearing to terminate her parental rights. By that time she had had four children out of wedlock, including her youngest child, A.H. Owens may have attended some high school but did not graduate. She had no car, no telephone, and had worked only infrequently for short periods of time. She had been on public aid since she had her first child at age 16. Public aid provided her with $403 a month and food stamps. She and her children lived with her cousin and his wife.

A.H. was born prematurely and had developed an infection of his bowel. As a result, most of his bowel was surgically removed. Because of that, he had chronic diarrhea and difficulty absorbing foods and fluids. He required a special diet, medication, frequent visits to the doctor, and a great deal of care. On March 15, 1989, A.H. was adjudicated a neglected minor because Owens was unable to provide the care he needed. On April 12, 1989, the Department of Children and Family Services was awarded custody.

On July 19, 1990, the State filed a supplemental petition for termination of Owens' parental rights. The petition alleged that Owens had failed to make reasonable efforts within 12 months of the adjudication of neglect to correct the conditions which caused the removal of the child. It also alleged that she had failed to make reasonable progress toward the return of the child within 12 months of the adjudication of neglect. The court held a hearing on the petition and various witnesses testified.

Dr. John Galbreath testified that he was A.H.'s physician. He indicated that A.H.'s medical problems still existed, but he no longer got sick quite as often because he was older. Although A.H. no longer needed to go to the doctor every week, he still needed to go on a regular basis. Dr. Galbreath testified that while A.H.'s problems would probably decrease when he was toilet trained, he would still require a special diet.

Foster care caseworker Bobbie Bess testified that she had been the primary caseworker for A.H. between October 27, 1988, and April 2, 1990. She stated that she prepared client service plans that

set forth goals Owens was to accomplish to demonstrate her ability to parent A.H. properly. Bess testified that although Owens had met some of the goals, she had failed to accomplish others.

Under the service plans, Owens was to visit with A.H. weekly. Bess indicated that Owens' attendance was poor. Several months, Owens visited only once or twice if at all. Additionally, Owens was to provide a stable home environment. However, she frequently moved and at the time of the hearing was on a waiting list to move again. Finally, under the plans, Owens was to regularly attend A.H.'s doctor appointments so she could learn to properly care for him. Despite the importance of these visits, between March of 1989 and March of 1990, Owens attended only 12 of A.H.'s 47 doctor appointments.

Foster care caseworker Linda Derkin testified that A.H. had been in his current foster placement for six or seven months. He was doing well in preschool and was more active. In her opinion, he was developing into a normal three-year-old boy.

Owens testified that she had failed to attend many visits with A.H. and the doctor because she did not have adequate child care. She stated that she knew how to take care of A.H., including how to change his diaper and apply the proper medicine. She also indicated that she was able to take care of her other three children.

Owens' mother, Jules Sanchez, testified that although she was a licensed foster parent, she had been advised by someone from the State that Owens could not live with her. It was her opinion that Owens had a loving, mother-child relationship with A.H. She also thought that Owens had matured and took good care of her other children.

The trial court held that the respondent had failed to make reasonable efforts to correct conditions existing at the time custody was taken away and had failed to make reasonable progress toward the return of the child. It therefore held that she was unfit. The court subsequently found that it was in A.H.'s best interests to terminate the respondent's parental rights. The respondent appeals.

On appeal, the respondent first contends that the State failed to prove by clear and convincing evidence that she was unfit. She argues that her efforts and progress were reasonable when considered in light of her disadvantages. We disagree.

The question of what is a reasonable effort involves a subjective judgment based upon the amount of effort which was reasonable for a particular person. (*In re Doolan* (1981), 101 Ill. App. 3d 322, 427 N.E.2d 1348.) In contrast, whether a parent's progress is reason-

able involves an objective judgment based upon the amount of progress measured from the conditions existing at the time custody was taken from the parent. (*In re Doolan* (1981), 101 Ill. App. 3d 322, 427 N.E.2d 1348.) Failure to make reasonable efforts to correct conditions and failure to make reasonable progress toward the return of the child are independent bases for a finding of unfitness. *In re Allen* (1988), 172 Ill. App. 3d 950, 527 N.E.2d 647.

■ In the instant case, the trial court had enough evidence to find not only that the respondent failed to make reasonable progress, but also that she failed to make reasonable efforts toward the return of the child. We recognize that the respondent faced some obstacles because she was poor, had a limited education, and had three other children to care for. However, facing such obstacles did not preclude her from making reasonable efforts to prepare herself to properly care for A.H.

Even though the respondent was told how important it was that she learn to care for A.H., only rarely did she show up for his doctor appointments. She contends that she missed his appointments because she was unable to arrange for someone to take care of her other children. We find, however, that her inability to make such simple arrangements did not bode well for her ability to meet A.H.'s special needs. Furthermore, the record does not indicate that the respondent has taken any steps that would help assure she could make future appointments. Accordingly, we find that the trial court did not err in finding the respondent unfit.

■ The respondent's second argument on appeal is that the State failed to prove by clear and convincing evidence that the termination of her parental rights was in the best interest of the minor child. In support of this argument, the respondent contends that she has matured and A.H.'s condition has stabilized. She also contends that the trial court based its determinations on improper moral judgments. We disagree.

Although caring for A.H. may be less demanding than it once was, he still requires much more care than a healthy child. Since the respondent failed to show up for A.H.'s doctor appointments, it seems risky at best to entrust his care to the respondent. The respondent is still faced with the same problems that prevented her from attending earlier doctor visits. If the respondent's parental rights were reinstated, the fact that A.H. needs to go to the doctor less frequently would only mean that he would have fewer appointments for the respondent to miss, not that the respondent would become more responsible.

With the exception of her mother's testimony, there is little in the record to indicate that the respondent has significantly matured. In fact, she dropped out of a program designed to help her get her GED, despite the fact that she was told of an organization that would provide transportation for her and her children to the GED classes.

■ Finally, the record does not appear to support her claim that the trial court based its decision on improper moral considerations. In announcing its decision at the unfitness hearing, the trial court specifically indicated that it was not judging the respondent as a person and saying she was bad. Likewise, in announcing its decision at the best interest hearing, the court indicated that it was not saying whether the respondent made good or bad judgments. Rather, the court used relevant and important factors in making its decision.

The court indicated that A.H. was a good candidate for adoption despite his medical problems. The court noted that it did not believe that A.H. would get the attention he needed from the respondent. It also indicated that it doubted the respondent's family would aid significantly in meeting the basic needs of the respondent and her children. Accordingly, we find that the trial court's determination was based upon proper factors and supported by clear and convincing evidence. *Giacopelli v. Florence Crittenton Home* (1959), 16 Ill. 2d 556, 158 N.E.2d 613 (A natural parent's right to the custody of her child is not absolute and must yield to the best interests of the child).

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BARRY and McCUSKEY, JJ., concur.