In re M.C., a Minor (The People of the State of Illinois, Plaintiff-Appellee,
v. Victoria Gill, Defendant-Appellant).

First District (1st Division)   No. 1—89—2551

Opinion filed July 30, 1990.

Randolph N. Stone, Public Defender, of Chicago (Mary C. Arundel, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Veryl L. Gambino, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

This is an appeal from the order terminating the parental rights of Victoria Gill (Gill), mother of M.C., a minor.

Victoria Gill's daughter, M.C., was born on October 17, 1983. In December 1985, a finding of neglect was entered and M.C. was adjudicated a ward of the court. Temporary custody was awarded to Gary T. Morgan, the Guardian-Administrator of the Department of Children & Family Services (DCFS), with the right to place M.C. in a foster home. On March 31, 1986, M.C. was placed in the foster home of Nancy and Michael Van Milligen.

On June 7, 1988, the State filed a petition for appointment of a guardian with the right to consent to adoption seeking to have Gill declared an unfit parent. The State alleged that Gill: (i) failed to maintain a reasonable degree of interest, concern or responsibility about M.C.'s welfare; (ii) deserted M.C. for more than three months prior to the proceedings for termination of parental rights; and (iii) failed to make reasonable efforts to correct the conditions which were the basis for M.C.'s removal or to make reasonable progress toward M.C.'s return within 12 months after the adjudication of neglect or dependency, in violation of sections 1(D)(b) and 1(D)(c) of the Adoption Act (Ill. Rev. Stat. 1987, ch. 40, pars. 1501(D)(b), (D)(c)) and section 2—29 of the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1987, ch. 37, par. 802—29), respectively.

On June 26, 1989, the termination hearing began. The State's first witness was Bonnie Crabb (Crabb), a worker assigned to M.C.'s case. Crabb testified that the case was originally brought to court because of

Gill's drug dependency and neglect of M.C. At the trial, Crabb reviewed and testified about the service plans that were developed for the family. Each service plan covered a six-month period beginning in January 1986 through May 1988.

Crabb reviewed the first service plan, which was from May 1986 through November 1986. The service plan's goal was for M.C. to return home and included the following objectives: Gill was to attend drug counseling; M.C.'s parents were to visit her regularly; and Gill was to attend a parenting stress group. When Crabb reviewed this service plan, she evaluated that the drug counseling was satisfactory; that visitation was satisfactory; and that the parenting stress group objective was unsatisfactory due to sporadic attendance. Also at the case review, Gill participated in formulating a new service plan for November 1986 through May 1987. The goal still remained for M.C. to return home, but the drug counseling objective specified that Gill was to enter an in-patient facility. Visitation was set on a weekly basis.

Next, Crabb reviewed the November 1986 to May 1987 service plan with Gill and evaluated that the drug treatment objective was unsatisfactory because Gill entered an in-patient facility for one month, and dropped out of the program when she did not return from a temporary pass. Crabb also found that the visitation objective was unsatisfactory because Gill only visited M.C. twice during the six-month period.[1] A new service plan was formulated for May 1987 through November 1987. The service plan's objectives generally remained the same, but Gill and M.C.'s father were, additionally, supposed to meet with Crabb on a monthly basis.

Crabb then reviewed the May 1987 to November 1987 service plan and evaluated that the visitation objective was unsatisfactory because Gill only visited M.C. once during the six-month period. Also, she found that the drug treatment evaluation was unsatisfactory because Gill did not participate in either of the recommended programs at Women's Residential Center and Loretta Hospital, nor was she attending the previous drug treatment program. Crabb testified that she and another worker had taken Gill to Loretta Hospital for a drug treatment program, but that Gill did not follow the hospital's recommendations for treatment. A new service plan was formulated for November 1987 through May 1988. The service plan's goal changed from M.C.'s "return home" to "long term foster care," but the objectives set forth for Gill remained the same.

---

[1]Additionally, the record reflects that Gill was present once when M.C. visited her maternal grandmother.

Finally, Crabb reviewed the November 1987 through May 1988 service plan. Crabb testified that the visitation objective was unsatisfactory because Gill did not visit M.C. during the six-month period. Additionally, Crabb found that the drug treatment objective was unsatisfactory because Gill did not attend any drug treatment facility during that period.

During cross-examination by the guardian *ad litem*, Crabb testified that from November 1986 through May 1988 Gill only visited M.C. three times and had not satisfactorily completed any of the drug treatment programs.

During the cross-examination by the public defender, Crabb testified that from November 1986 through May 1987 Gill was cooperative with the homemaker assigned to her and that Gill was present and signed all case reviews. Crabb also testified that Gill was not cooperative about keeping all of her appointments, but during those visits that did take place, her behavior with M.C. was appropriate.

The State also called Cindy Kirshman, a social worker, who testified that M.C. had just been taken from the long-term foster home of Michael and Nancy Van Milligen in June of 1989, and was placed in a new foster home which would lead to adoptive placement. She further testified that, in her opinion, it was in M.C.'s best interest that the DCFS Guardian-Administrator be appointed her guardian with the right to consent to adoption. After Kirshman testified, the termination hearing was continued to September 6, 1989.

On September 6, 1989, Gill testified. She stated that M.C. would soon be five years old and that she had been out of Gill's custody for four years.[2] She testified that she had worked with DCFS for four years trying to get M.C. back and that she had been in various drug treatment programs. Additionally, Gill testified that she was not using any drugs or alcohol and that she was on a waiting list for "outside counseling, St. Elizabeth Hospital." Gill said that she had not visited M.C. for a long time, but said that she asked for a visit "about two months ago" and was told that she would have to wait because M.C.'s foster placement was being changed. Gill also testified that her 10-month-old daughter was living with her. The trial court sustained the State's objection to defense counsel's question regarding the fact that Gill's 10-month-old daughter was living with her under a protective order. Gill testified that she wanted M.C. returned to her in the future and she wanted to have more visits. During cross-examination of Gill

[2]Although Gill testified that M.C. would be five years old on October 17, 1989, M.C. was actually going to be six years old, having been born in 1983.

by the assistant State's Attorney, Gill testified that from November 1985 through June 1988, she only visited M.C. once or twice.

Thereafter, the trial court made a finding that Gill and M.C.'s father were unfit because they had failed to maintain a reasonable degree of interest, concern or responsibility for M.C.'s welfare; that they had failed to make reasonable efforts to correct the conditions which were the basis for M.C.'s removal; and that they failed to make reasonable progress toward the return of M.C. The trial court terminated their parental rights and awarded guardianship of M.C. to DCFS with the right to consent to adoption.

■■ ■ Initially, Gill argues that she maintained a reasonable degree of interest, concern, and responsibility for M.C. during the four years that M.C. was in foster care. We disagree. The trial court's findings must be given great deference since it had the opportunity to view and evaluate the witnesses' testimony, and the trial court's decision will not be reversed on appeal unless it is contrary to the manifest weight of the evidence. (See *In re Henry* (1988), 175 Ill. App. 3d 778, 530 N.E.2d 571.) Gill cites several cases where a parent was found unfit and contends that those cases are distinguishable because the facts were more egregious regarding visitation. (*E.g., In re Woods* (1977), 54 Ill. App. 3d 729, 369 N.E.2d 1356; *In re N.H.* (1988), 175 Ill. App. 3d 343, 529 N.E.2d 1115; *In re Ice* (1976), 35 Ill. App. 3d 783, 342 N.E.2d 460; *Pyatt v. Pyatt* (1980), 88 Ill. App. 3d 8, 410 N.E.2d 241; *In re Perez* (1973), 14 Ill. App. 3d 1019, 304 N.E.2d 109.) Contrary to Gill's contention, more than enough evidence was presented to sustain the trial court's determination, such as Gill's continued addiction to drugs, her repeated failure to obtain treatment for that addiction, and her infrequent and irregular visitation with M.C. These facts are more than sufficient to warrant a finding that Gill lacked interest, concern or responsibility for M.C. Even when Gill was informed that DCFS' goal was to place M.C. in long-term foster care, Gill failed to visit M.C.

■■ Next, Gill challenges the court's finding of unfitness pursuant to section 1(D)(m) (Ill. Rev. Stat. 1987, ch. 40, par. 1501(D)(m)), arguing that she was making reasonable efforts to correct the conditions that required M.C.'s removal and that she made reasonable progress towards the return of M.C. Again, we disagree. Section 1(D)(m) (Ill. Rev. Stat. 1987, ch. 40, par. 1501(D)(m)) provides that a parent may be found unfit for failure "to make reasonable efforts to correct the conditions which were the basis for the removal of the child from such parent, or to make reasonable progress toward the return of the child to such parent within 12 months after an adjudication of neglected minor." (Ill. Rev. Stat. 1987, ch. 40, par. 1501(D)(m).) "Failure

to make reasonable efforts to correct conditions and failure to make reasonable progress toward return of the child are independent bases for a finding of unfitness." (*In re Henry* (1988), 175 Ill. App. 3d 778, 790, 530 N.E.2d 571, 579.) "Whether a parent's efforts to correct the conditions are reasonable involves a subjective judgment based upon the amount of effort which is reasonable for a particular person." (*In re Henry* (1988), 175 Ill. App. 3d 778, 790, 530 N.E.2d 571, 579.) In contrast, whether a particular parent's progress towards return of the child within 12 months of being adjudicated neglected is reasonable involves an objective judgment based upon the amount of progress measured from the conditions existing at the time custody was taken from the parent. (*In re Henry* (1988), 175 Ill. App. 3d 778, 790-91, 530 N.E.2d 571, 579.) At a minimum, reasonable progress requires measurable or demonstrable movement toward the goal of reunification. (*In re Henry* (1988), 175 Ill. App. 3d 778, 791, 530 N.E.2d 571, 579.) After reviewing the evidence presented regarding Gill's conduct contained in the record, it is clear that Gill's efforts and progress decreased between 1986 and 1989, since her visits within M.C. lessened and she ceased to participate in any drug treatment program. The record sustains the trial court's finding that Gill failed to make reasonable efforts to correct the conditions which caused M.C. to be removed and that Gill failed to make progress towards M.C.'s return within 12 months from June 6, 1986, the date of adjudication of neglect.

■ Finally, Gill argues that the trial court improperly excluded evidence regarding her 10-month-old child. We disagree. The trial court properly sustained an objection regarding further questions about the 10-month-old child because testimony regarding Gill's ability to care for another child is irrelevant to the issue of her fitness as a parent to M.C. Nevertheless, testimony was elicited that Gill's 10-month-old child was currently at home. Moreover, the claimed error was harmless since clear and convincing evidence was introduced to support a finding that Gill lacked interest, concern and responsibility towards M.C. and that Gill was either unwilling or unable to complete any drug treatment program.

In conclusion, the entirety of the evidence sustains the trial court's determination that Gill is an unfit parent. Therefore, the order terminating her parental rights is affirmed.

Affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.